J. N. ESLINGER, RESPONDENT, *v.* ARTHUR PRATT, APPELLANT.

SALT LAKE CITY—CHIEF OF POLICE—POWER TO SUSPEND OFFICERS —RIGHT OF APPEAL.

1. The plaintiff and respondent was sergeant in the police force of Salt Lake City, and was dismissed by the defendant, as chief of police, for a violation of the rules promulgated by said chief and for insubordination. A report of said dismissal was duly made to the board of police and fire commissioners,

who affirmed the action of the chief by a refusal to reinstate the plaintiff. The defendant had promulgated rules for the regulation of his department, under authority conferred upon him by section 10 of the Session Laws of 1896 (page 223). The board did not adopt rules which the said section 10 conferred the power upon them to adopt, but were equally divided as to what, if any, rules should be adopted. *Held* that, in the absence of any rules, promulgated by the board, to limit the authority of the chief of police to make rules, the latter was authorized to make and enforce the regulations which the law empowered him to make; that in the following clauses of section 10: " It shall be their [the chief of police and chief engineer] duty to make and enforce rules and regulations to secure discipline in their respective departments. They shall have power, under such rules as the board may establish, to suspend without pay, fine not to exceed ten dollars, or dismiss any subordinate,"—the word "under" means "subject to"; and that the intention of the legislature was to grant the power to the chiefs to suspend, etc., but to give the board the authority to limit or qualify the power, and, since the board had failed to exercise this power under the authority of the law, the regulations of the chiefs must prevail, and the duty of seeing that the employés faithfully discharged their duties, as he was required to do under section 8 of the same law (page 222), justified him, subject to the approval of the board by a failure to reinstate, in the dismissal of the plaintiff. This construction is reinforced by the use of the word "may," a word here used undoubtedly in a primary or permissive sense.

2. The right of appeal is guaranteed under section 3634, Comp. Laws 1888.

~          (No. 719.   Decided Oct. 13, 1896.)

Appeal from the Third district court, Salt Lake county. Hon. John A. Street, *Judge.*

Respondent filed an affidavit to obtain an alternative writ of mandate, claiming that his dismissal from the police force was wrong, as the board of police and fire commissioners had not adopted any rules at the time of the dismissal. The board were equally divided on the

adoption of rules. The case further shows that the respondent applied to be reinstated after the dismissal and that the board refused to reinstate. The writ was issued and the appellant as chief of police demurred and answered, and on the hearing the court found for the respondent and awarded a peremptory writ. Defendant appeals. *Reversed.*

*Williams, Van Cott & Sutherland,* for appellant.

*C. S. Varian,* as *amicus curiæ.*

The clause "under such rules as the board may establish," in section 10, is a qualifying one, and marks the grant of power to the chiefs. It is not a *proviso,* but is a part of the enacting clause of the grant of power. Under settled rules, it must be construed rationally and in accord with the common understanding of the language and with relation to its context. No reasonable person in reading this language could adopt the forced and unmatural construction of appellant. The legislature has not said: "they shall have power to suspend, etc., provided the board may make such rules restricting such power," but, it has written, "they shall have power *under* such rules as the board may establish, etc." That is in accordance with such rules. It is clearly contemplated that the board will make rules, and it is quite immaterial whether the word is "may" or "shall." Either means the same in this connection. The word "must" would be incongruous and inharmonious in the sentence as it is placed.

When cases shall arise not provided for by rule, under section 11, the chiefs may prefer charges. The chiefs may prescribe rules of discipline, but the penalties for a breach thereof must be defined by rule of the board, when they may be enforced by the chiefs.

It is not perceived that section 14 authorizes a different construction. The reference to "the pleasure of the respective chiefs" does not indicate a *grant* of power. For the grant of power we look to section 10, and "the pleasure of the respective chiefs, or a majority of the board" in section 14, is limited by "as herein provided." If "the pleasure of the chiefs," etc., is susceptible of the interpretation claimed, then it is clearly contrary to the general purview of the act as well as of section 10, and must look for an interpretation which will enable us to harmonize it with the entire act. Sutherland, Statutory Construction, sec. 238.

The language used is inapt and unfortunate, since it cannot, taken literally by itself, express the true intent of the legislature, which as before shown, was not to leave the question to the *pleasure* of the chiefs. So, these words must be read as the general and true intent requires. Sutherland, secs. 218, 246, 429.

That is to say, the word "pleasure" within the general purview of the act, cannot be given its literal meaning. As limited by "as herein provided," the necessity for a restricted meaning is more apparent.

It being clearly shown that the board is the head of the department, and intrusted with full supervisory power and control, it must be apparent that the chief has no right of appeal here. Such right is inconsistent with proper discipline and subordination. He has no right connected with the removal or non-removal of a member of the force, which authorizes him to test the action of the board in this way. The board has *acted,* acquiescing in the judgment of the court, and has reinstated the man. The case as originally presented to the court below, is not now before this court. In accordance with the statute, rules governing the imposition of penalties have been promulgated. The judgment of this court

interpreting the statute would be inoperative. There-fore this appeal should be dismissed.

Miner, J.:

The respondent filed an affidavit in the court below to obtain an alternative writ of mandate. It appears from the affidavit that on May 9, 1896, the respondent was a policeman and sergeant of police of Salt Lake City; that the board of police and fire commissioners of Salt Lake City was duly appointed and organized under the act of the legislature approved March 30, 1896; that said board have not formulated, adopted, or promulgated any rules or regulations, as provided by section 10 of said act, under which the chief of police could lawfully act, and that no such rules are in force; that Arthur Pratt was, on the 9th day of May, 1896, and for a long time prior thereto had been, chief of police; that, while respondent was act-ing as policeman, on said 9th day of May, 1896, the said Arthur Pratt, chief of police, without filing any charges against the respondent, assumed to dismiss the respond-ent from said office of policeman and sergeant of police, and refused to permit him to exercise his duties as such, although he has repeatedly applied to be reinstated to his position; that respondent has made application to the board, at its regular session, to be restored, and the board has refused to grant his request; that said chief of police did not at the time, nor since his dismissal, file any charges against respondent; that said dismissal, and the refusal of the chief of police and said board to restore him, were unlawful,—and prays for an alternative writ of mandate, requiring said chief of police and board to restore him to his office. The board of police and fire commissioners of Salt Lake City answered, admitting the facts stated as true, but alleged: That the chief of police, at the next regular meeting of said board after

respondent's dismissal, reported in writing to the board his reasons for such dismissal as follows: "For wilfully violating the inclosed written orders, for using disrespectful language to the chief of police, and gross insubordination." (The written orders and rules are set out as hereinafter stated in the answer of the chief of police.) That the board have been and are equally divided in members and opinion upon the construction and interpretation of said law, and for that reason have failed and neglected to formulate and promulgate rules and regulations, under section 10 of said law, to govern punishments thereunder by the chief of police. Appellant, Arthur Pratt, as chief of police, filed his demurrer to the affidavit and writ, alleging that they do not state facts sufficient to constitute a cause of action or to afford any relief. Arthur Pratt, chief of police, together with Frank W. Jennings and Louis Cohn, two of said board, answered: Denying that any rules should be adopted by said board before said chief of police can lawfully act in dismissing, fining or suspending. That said plaintiff at said time was dismissed by said chief for gross insubordination, for disrespect to said chief, and for violating the rules of said department. That at the next regular meeting of said board the chief of police reported to the board his reasons for such dismissal in language following: "Salt Lake City, May 9, 1896. To the Hon. Police and Fire Commissioners: Gentlemen—I have this day dismissed from the police department Sergeant J. N. Eslinger. He was dismissed for the following reasons: For wilfully violating the inclosed written orders, for using disrespectful language to the chief of police, and gross insubordination. Arthur Pratt, Chief of Police."

"Salt Lake City, May 6, 1896. Special orders for May 8th and 9th, 1896. First relief will report for duty at 6 o'clock p. m., and remain until further ordered. Sec-

ond relief will report for duty at 10 o'clock a. m. and remain until further ordered. Third relief will report for duty at 6 o'clock p. m., and remain until further ordered. Arthur Pratt, Chief of Police."

That said communication was filed, and said plaintiff appealed to the board for reinstatement, but said board, before the commencement of this action, refused to reinstate said plaintiff for the reasons aforesaid, and refused to disturb the action of the said chief. That on and prior to May 9, 1896, there were made by said chief, and in force in said police department, rules providing that any act of insubordination, or any disrespect to a superior officer, or violation of any of the rules of the said department would be punished by dismissal. That on May 9, 1896, plaintiff was guilty of acts of insubordination in wilfully refusing to remain for duty with said third relief until further ordered, and guilty of disrespect to said chief in imputing to him improper and dishonorable conduct, and guilty of neglect of duty in abandoning said third relief, and leaving his men and quitting said department without permission, and the plaintiff was dismissed for said acts. That said board have not adopted any rules regulating or limiting the power of the chief to suspend, fine, or dismiss, and the board is equally divided as to what, if any, rules should be adopted. The court below found that the dismissal of the plaintiff by the chief of police was unlawful, and ordered that the writ of mandate issue as prayed for, and that the plaintiff have judgment against the defendant for costs. From this order and judgment the defendant Arthur Pratt, chief of police, appeals.

The principal question involved in this appeal is whether the appellant, Arthur Pratt, as chief of police, had power to dismiss the respondent, when the board of

14 UTAH—8

fire and police commissioners had not adopted any rules of their own, and whether such dismissal was lawful under the rules adopted by the chief of police. Section 10, c. 73, p. 222, Sess. Laws 1896, provides that "the chief of police shall be the executive officer of the police department; the chief engineer shall be the executive officer of the fire department; and it shall be the duty of each to see that the laws, orders, rules, and regulations, concerning his department are carried into effect. * * * It shall be their duty to make and enforce rules and regulations to secure discipline in their departments respectively. They shall have power, under such rules as the board may establish, to suspend without pay, fine not to exceed $10.00, or dismiss any subordinate officer, member or employé of their respective departments, but they shall forthwith report in writing the reasons for such action to the board hereby created, by whom said fine may be remitted, or by whom said subordinate officer, member or employé may be reinstated by a vote of three members, and the action of said chief of either department in suspending, fining, or dismissing any subordinate officer, member or employé unless reversed or modified by said board, and any action of the board thereon shall be final and conclusive, and shall not be reviewed or called in question before any court." It will be noticed that the statute provides that it is the duty of the chief to make and enforce rules and regulations to secure discipline in his department. It appears from the answer that, in accordance with and in obedience to the statute, the chief of police made rules, which were in force in the police department May 9, 1896, providing that any act of insubordination, or any disrespect to a superior officer, or neglect of duty, or violation of any rules of duty of the department, would be punish-

able with dismissal. It also appears from the answer that the plaintiff, on the 9th day of May, 1896, was guilty of insubordination, disrespect, dishonorable conduct, and neglect of duty in violating the rules, for which he was dismissed, and the reasons for such dismissal were reported in writing to the board; that plaintiff appealed to the board for reinstatement, and such board, before the commencement of this action, refused to reinstate the plaintiff, for the reasons given, and refused to disturb the action of the chief. The statute gave the chief power, and made it his duty, to make and enforce rules and regulations to secure discipline in his department. The chief made such rules without objection from the board, and the plaintiff violated such rules. The statute provides that it is the "duty" of the chief to see that the laws, orders, rules, and regulations concerning his department are carried into effect. The only method and manner of enforcing laws and rules by the chief, pointed out by the statute, is by dismissal, suspension, or fine. It is difficult to see how discipline and good government in the departments could be enforced, and the statute carried into effect, without the infliction of the punishment provided by the rule. The board, having adopted no rules of its own, refused to reinstate the plaintiff on his application, and refused to disturb the action of the chief, thereby affirming the order of removal, and the rule under which the removal was made, as well as the act of removal, and the power of the chief to remove. The board never made any rule defining or limiting the powers of the chief, except by their acts in affirming what was done by refusing to reverse or modify the order and reinstate the plaintiff. By the provisions of the statute it was made the "duty" of the chief to make rules and regulations for the express purpose of securing discipline in his department, and, when made, it was equally

his duty, under the statute, to enforce such rules, in order that discipline should be maintained, and the department made efficient, for the purpose for which it was organized. The fact that the board had not adopted rules of its own, and was unable to do so, rendered it still more necessary and proper that the chief should make rules, and enforce them, in order to preserve the necessary and proper discipline in the department, and police protection to the city. Under the rules made it was competent for the chief to remove the plaintiff for the violation of them and his neglect of official duty, as reported to the board, and it was competent for the board to reinstate the officer and reverse the order of dismissal, or to affirm it. The board refused to reverse or modify the order of removal for the reasons given, or to reinstate the plaintiff, and refused to disturb the action of the chief. So far as the board could do, they affirmed by their official acts all that was done by the chief, and recognized his authority to do what was done, and thereby recognized and affirmed the rules adopted by the chief as rules of the department.

But it is contended by the respondent that, in the absence of rules actually adopted by the board, the appellant had no power to dismiss; in other words, that the power to suspend, fine, or dismiss comes from the rules the board may adopt, and not from the statutes, nor from the rules adopted by the chief. The particular provision in the statute following that just referred to reads as follows: "The chiefs shall have power, under such rules as the board may establish, to suspend without pay, fine not to exceed ten dollars, or dismiss any subordinate officer, member or employé of their respective departments." What construction should the words "under such rules as the board may establish" have? The word "under" means "subject to." 27 Am. & Eng. Enc. Law, p. 433. With this interpretation the clause would read,

"They [the chiefs] shall have power, subject to such rules as the board may establish, to suspend," etc. This reading presumes that "under" is used in the sense of "subject to," and, if correct, shows the legislature to have intended to grant the power to the chiefs to suspend, etc., but to give the board the power to limit, or qualify the power; so that the legislature, in using the words of the statute, has granted a present power to the chiefs to suspend, fine, and dismiss, but has given such power subject to the rules that may be established by the board. The word "may," as used in this section, is doubtless used in a primary or permissive sense. Suth. St. Const. p. 592, § 462; *Thompson* v. *Lease,* 22 How. 434; *Miner* v. *Bank,* 1 Pet. 64; 2 Comp. Laws, § 2996. It is only reasonable, when the legislature has granted the power, to say that the power exists, subject to be qualified or limited by the board, and then such construction would harmonize the entire section. When the legislature used the language, "It shall be their duty to make and enforce rules," etc., "They shall have power under," etc., it must have intended to make it the duty of the chiefs to make and enforce rules, and have power to suspend, fine or dismiss; but, as the chief might abuse the power, the authority was reserved to the board to make other rules, so as to control, disarm, modify, or qualify any abuse of power that might be exercised or assumed, either by rule or act of the chief.

Jugdment was rendered against the appellant, and for costs in the court below. Under section 3634, Comp. Laws 1888, he is entitled to appeal. Hayne, New Trials & App. § 23. The judgment and decree of the court below is set aside and reversed, with costs, and the writ of mandate prayed for is denied.