In and for the County of Los Angeles.

Charles J. Casper, Plaintiff,

vs.

The City of Los Angeles, et al., Defendants.

No. 169,915

## OPINION

### HARTLEY SHAW, Judge

By proper proceedings the City Council of the City of Los Angeles called an election at which the voters of said city duly authorized the issuance of bonds in the sum of $7,500,000 for the acquisition of land and the construction thereon of a new city hall. A part of said bonds have been sold, and proceedings for acquiring the site are under way. When this stage in the proceedings had been reached, the city council, on March 6, 1925, by a two-thirds vote of all its members, passed a resolution reciting some of the facts above stated and that the council had been considering the selection of an architect or architects for the city hall, and that "the design,

preparation of plans, and supervision of the erection of the city hall is of that nature requiring professional, scientific, and expert services" and declaring that "pursuant to the provisions of section 207-a, Article XX, of the charter of the City of Los Angeles, the offer of Curlett & Beelman, Incorporated, architects of the City of Los Angeles, to design, supervise the erection of and to do any and all things generally and usually required of architects in connection with the erection of a building similar in character to that of the city hall" was accepted and the City Attorney was directed to prepare a contract accordingly. Thereafter the City Attorney prepared the contract and approved it as to form, it was signed by Curlett & Beelman, Incorporated, and a bond for its faithful performance was executed therewith. On April 16, 1925, this contract and bond were presented to the city council, which thereupon, by the affirmative vote of eight of its nine members, adopted an order purporting to approve the said bond and contract and to authorize the President of the Council to sign the contract in behalf of the city. On April 17, 1925, the President of the Council executed said contract in behalf of the city. It provides that upon its execution the sum of $10,000 shall be paid to the architects on account of their fee. This action is brought by plaintiff as a taxpayer to enjoin the making of this payment from the city treasury on the ground that the contract is void, for reasons to be presently discussed. The matter comes on for hearing upon an application for a temporary injunction and demurrers to the complaint.

In support of his action the plaintiff contends that, under the provisions of the city charter which was in effect when the above mentioned proceedings were taken, the City Council had no power to make the contract in question, but that it was within the exclusive jurisdiction of the Board of Public Works. The defendants, of course, insist that the Council had such authority. Upon careful examination of the charter it appears that it nowhere by express language confers on any officer or board of the city the power to make such a contract as that here in question. The arguments of the parties rest on inferences to be drawn from various provisions of the charter, which, if they cover the subject, do so by virtue of necessary implication from the language used and a comparison of the various provisions referred to, and not by any express reference to this particular kind of a contract. This results from the continuous process of amendment to which the charter has been subjected since its adoption in 1889;—a process which finally wrought it into a patchwork of conflicting and incongruous provisions and rendered necessary the adoption of a new charter, which since the making of this contract has superseded that of 1889 and its amendments. This case, of course, must be determined on a construction of the charter provisions which were in effect when the contract was made.

As originally adopted Article XX of the charter covered the subject of contracts, and required them all to be made by the council. As amended and in force when this controversy arose, it has no such definite provision declaring by what of-

ficers of the city contracts shall be made, but contains numerous provisions fixing the procedure to be followed in the making of contracts. It clearly shows that all contract making power was not supposed to be in the council by those who framed its latest amendment, for its procedural requirements as to contracts are made applicable to "the Council, board, commission, or officer authorized to make the same."

Defendants' contention that the Council had power to make this contract is based principally on sections 12, 13, and 40 of the charter, which are as follows:

"Section 12. All legislative power of the city, except as hereinafter otherwise provided, is veto and approval by the Mayor, as hereinafter given, and shall be exercised by ordinance; other action of the Council may be by order upon movested in the Council, subject to the power of tion."

"Section 13. The Council is the governing body of the city, and shall meet on at least five days of each week, and shall provide by ordinance for the manner, time and place of holding all regular and special meetings.

"Section 40. The Council shall also have full power to pass ordinances upon any other subject of municipal control or to carry into effect any other powers of the municipality."

These sections are a part of Article III, which is entitled "Powers and Duties of the Council."

In this same article appears section 23, which also bears on this matter, and so far as material is as follows:

"Section 23. It shall, except as otherwise provided herein, provide suitable rooms and officers for the courts, boards and officers of the city."

Section 2 of the charter, which is a long enumeration of the powers of the city, includes as one of them: "To provide—any and all buildings—which are necessary or convenient for the transaction of public business."

The construction of a city hall is manifestly within the power conferred on the Council by section 23; and in the absence of any further provision this section would by implication authorize the Council to construct a city hall and to make all necessary contracts therefor, including the hiring of architects. The construction of a city hall is also one of the powers of the city, by virtue of the above quoted part of section 2; and no doubt the execution of that, as well as all the other powers of the city, is vested in the Council by sections 12, 13, and 40, where the charter makes no other provision therefor.

Section 207-a requires a notice inviting bids to be published and certain other forms of procedure to be followed before making a contract with a proviso stating:

"that the provisions of this section requiring the publication of notice inviting proposals and

the letting of contracts to the lowest bidder shall not apply to contracts previously authorized by a two-thirds vote of the Council for the performance of professional, scientific, technical or expert services."

This proviso is no doubt applicable to the present case; and the resolution passed by the Council indicates that they regarded it as a grant of power to them to make such a contract. But a consideration of the whole section and of several other provisions shows that this proviso does not deal with the general power to make such contracts, and that its intent is merely to authorize the Council to dispense with advertising for bids and award to the lowest bidder. In other words, any officer or board empowered to make a contract for expert services, etc., may do so under the ordinary procedure of advertising for bids without consulting the Council on the subject; but if they desire to be relieved of this requirement they must apply for and obtain from the Council, by a two-thirds vote, authority to make the contract. The language quoted lends itself readily to this construction, and must unquestionably be so construed with reference to the Board of Library Directors and the Board of Harbor Commissioners, whose powers, under other provisions of the charter, extend in proper cases to the making of such contracts. The same construction should be given in all other cases to which the proviso applies.

I come, then, to the question, are there other provisions of the charter by which the power to make this contract is lodged with any officer or

board other than the Council? The defendants appear to contend that this cannot be done by implication, or "indirection," as they term it, but that some express words must be found to divest the Council of the power. I do not regard this as a proper construction of the words "except as otherwise provided herein," found in section 23, and the similar words in section 12. The whole charter must be considered together in order to ascertain the meaning of any part, and the operation of one provision may be limited, not only by the express language of other provisions, but also by any reasonably necessary implication therefrom. Such implications amount as fully to provisions for the matters implied as do express provisions therefor. Moreover, as already stated, there is no provision of the charter by which the power to contract for the construction of a city hall or for architect's services, is expressly vested in any officer or board. The above reasoning as to the general authority of the Council rests on inference or implication from powers which are expressly granted. There is no reason why this general implication may not be limited by the inferences or implications arising from other provisions of the charter. All such inferences are of equal dignity and all must be considered together in order to arrive at the true meaning of the whole charter.

The powers of the Board of Public Works are set forth in Article XIV of the charter, which was added thereto in 1905 and has since been amended several times. A study of this article clearly reveals an intent to confer substantial

powers on the Board of Public Works which had theretofore been vested in the Council and other officers. The Board is made the successor of the street superintendent and the superintendent of buildings (sec. 144) and is given full power to advertise for bids and make contracts for street work (sec. 145), and has charge of the enforcement of ordinances relating to the construction of buildings (sec. 149), as well as other powers to be considered more specifically.

The argument for the plaintiff is that section 146 of this article confers on the board, by necessary implication, the power to make the contract now before the court. That section reads in part as follows:

"Section 146. The Board of Public Works shall have charge, superintendence and control, under such ordinances as may from time to time be adopted by the City Council:

4. Of the design, construction, alteration, repair, maintenance and care of all public works and improvements, and of all public buildings belonging to the city."

The defendants, on the other hand, contend that this section is not a grant of power at all, pointing to the words "under such ordinances," etc., in the introductory clause, and claiming that until the Council acts thereunder the board has no power in the matters enumerated in the section and that the intent of the charter is merely to provide an administrative assistant to the Council, of whose services the latter need

not avail itself unless it so desires; conceding, however, that if the Council does make a delegation of power as to any of the matters referred to in section 146 it must be to the Board of Public Works and not to any other officer or board.

The ordinary meaning of the language used in section 146 suggests at once that it is a grant of power, whereas the argument of defendants gives a forced and unusual meaning to the words used. The section declares that "the Board of Public Works shall have charge, superintendence and control" of certain matters. No conditions precedent are mentioned (unless the phrase in relation to ordinances creates such a condition, as defendants argue), and the words "shall have" are mandatory in effect and imply the absence of any such conditions.

The introductory clause of section 146 is almost identical with a part of the San Francisco charter which the Supreme Court considered in the case of Vale vs. Boyle, 179 Cal. 180, 182. The question there was whether the Board of Public Works of San Francisco had power to make a contract for the purchase of busses for the municipal railway system. Section 9, subdivision 8, of the charter provided: "The Board of Public Works shall have charge, superintendence, and control, under such ordinances as may from time to time be adopted by the supervisors" of all public utilities owned or operated by the city and county. Other provisions gave the city and county full power to acquire, construct, and complete public utilities and provided that

the supervisors might make appropriations for extensions and improvements of any public utility. In this case, the supervisors had by ordinance directed the purchase of busses by the Board of Public Works according to certain specifications; but plaintiff claimed that the purchase should have been made directly by the supervisors under the sections of the charter relating to the purchase of supplies in general. The court held that the section quoted authorized the Board of Public Works to purchase, in conformity to the ordinance, the busses in question, and that the other provisions regarding purchases did not apply to them, saying:

"Charge, supervision, and control of such public utilities are vested by the charter in the Board of Public Works, under such ordinances as may from time to time be adopted by the supervisors. In the absence of any provision to the contrary in the charter, these provisions, no doubt, authorize the purchase by the Board of Public Works of equipment from the funds appropriated therefor by the Board of Supervisors in the manner provided by the ordinances adopted from time to time by the said Board of Supervisors."

In Crowe vs. Boyle, 184 Cal. 117, 128, the San Francisco charter again came before the court. The question for consideration was quite different from that involved here, but it required a construction of the same section 9, subdivision 8, which was discussed in Vale vs. Boyle, with some amendments thereof, and the Court said that under the language above quoted therefrom

"the authority to let contracts in accordance with the method prescribed in the charter would be in the Board of Public Works, and would be subject to the general regulatory powers of the supervisors."

It is true, as defendants point out, that other provisions of the San Francisco charter were involved in both of the cases just cited, and that the decisions reached were partly based on those other provisions; but the language quoted from each case is a direct statement of the view of the Supreme Court as to the meaning of language identical with that which I am now called on to construe, and even if it can be justly characterized as a mere dictum, which I doubt, it is yet persuasive on this court, and appears to me to be founded on good reason.

In Perry vs. Los Angeles, 157 Cal. 146, where the question was whether public work under charge of the Board of Public Works of Los Angeles must be let by contract, the court referred to section 146 of the charter as a grant of power to the Board.

In O'Melveny vs. Griffith, 178 Cal. 1, the court had under consideration a provision of the Los Angeles charter giving the Board of Park Commissioners power "subject to such ordinances as may from time to time be adopted by the Council, to have and exercise charge, superintendence and control of the design, location, construction, maintenance and use of all buildings—in such parks." The council had by ordinance undertaken to provide for a special com-

mission to have charge of the erection and management of a building in one of the parks with funds given by Griffith for that purpose. This ordinance was held void as an infringement of the powers of the Board of Park Commissioners. Other provisions of the charter than that above quoted were involved, but the following part of the opinion was written with that provision in mind; and is significant here:

"It is provided, with reference to the erection and control of buildings, that the same shall be 'subject to such ordinances as may from time to time be adopted by the council.' But here we do not have a case where the council sought by ordinance to direct the board of park commissioners as to the manner in which they should act in the location, maintenance, or use of buildings in a public park, but an ordinance by which it is sought to take from the board of park commissioners control over such improvements during the erection and after they have been completed, and by which it is sought to make a contract with a private individual for the creation of public officers to have control thereover in accordance with his proposal for the erection and maintenance of the building. We have an acceptance by the city council for and on behalf of the city of a gift, the consideration for which moving from the city is a surrender by the city council of some of the powers of the board of park commissioners vested in them, not by the city council, a creature of the charter, but by the charter itself. That is to say, one of the boards created by the people seeks to take from another

board, also created by the people through its charter, a power expressly vested by the people in the latter board."

The language which is thus held to be a grant of power is substantially identical with that of section 146, except that it uses the words "subject to" instead of "under" in the phrase relating to ordinances. This difference does not, I am satisfied, afford a reason for giving different constructions to the two sections. The word "under" has numerous meanings, but a very common one is "subject to" and I have no doubt that it is so used in section 146. It was so construed in Eslinger vs. Pratt, 14 Utah 107. That case involved a statute which provided that the chief of police should make rules and regulations to secure discipline in his department and "shall have power, under such rules as the board" (of fire and police commissioners) "may establish, to suspend—or dismiss any subordinate officer." The Board had made no rules, but the court held that the chief had power, by virtue of this statute, to dismiss an officer, as provided in rules he had adopted. The court said:

"But it is contended by the respondent that in the absence of rules actually adopted by the board, the appellant had no power to dismiss; in other words, that the power to suspend, fine or dismiss comes from the rules which the board may adopt and not from the statutes nor from the rules adopted by the chief. . . . The word 'under' means 'subject to.' With this interpretation the clause would read, 'they (the chiefs)

shall have power, subject to such rules as the board may establish, to suspend, etc.' This reading presumes that 'under' is used in the sense of 'subject to' and if correct shows the legislature to have intended to grant the power to the chiefs to suspend, etc., but to give to the board the power to limit or qualify the power; so that the legislature, in using the words of the statute has granted a present power to the chiefs to suspend, fine or dismiss, but has given such power subject to the rules that may be established by the board. The word 'may' as used in this section, is doubtless used in a primary or permissive sense (citing authorities). It is only reasonable, when the legislature has granted the power, to say that the power exists, subject to be qualified or limited by the board, and then such construction would harmonize the entire section."

I conclude from the above authorities, as well as the usual meaning of the words used, that the clause "under such ordinances as may from time to time be adopted by the city council" in section 146 was intended, not to provide a condition precedent to the vesting of any power in the Board of Public Works, but to reserve to the Council a right to regulate by ordinance the exercise of the powers granted to the board, and section 146 is a direct grant of power.

Defendants further contend that, conceding the conclusion just stated, yet the powers conferred by section 146 as to public buildings may be exercised by the Board of Public Works without actually employing the architects who make the design or the contractors who construct the

buildings, and therefor the power to contract on these matters is not granted. By this section the board is given "charge, superintendence and control" of the design, construction, etc., of all public buildings belonging to the city. Of course, the new city hall will be such a building. The words just quoted have been defined as follows:

**Charge:** "A position of care and custody" (Standard Dictionary); "A duty or task laid upon a person; custody or care of any person, thing, or place; office, responsibility; oversight; obligation; trust." (Webster's Dictionary); "A responsibility peculiar to the person or thing affected and authoritatively imposed; custody" (11 Corpus Juris 290 and cases cited).

**Superintendence:** "The act of superintending, guiding or controlling; supervision; direction; management; watchful care and rule." (Standard Dict.). "Act of superintending; care and oversight for the purpose of direction; supervision." (Webster's Dict.); "Care and oversight for the purpose of direction and with authority to direct." (37 Cyc. 593). To superintend is "to oversee with power of direction." (Webster); "to have the charge and direction of, especially of some work or movement; manage, supervise" (Standard); "to have charge and direction of; to direct the course and oversee the details of; regulate with authority; manage." (37 Cyc. 593).

**Control:** "The word has no legal or technical meaning distinct from that given it in its popular acceptation. It has been held as synon-

ymous with superintend, which is expressive of the meaning of the word, being defined as the act of superintending; care and foresight for the purpose of directing and with authority to direct." (13 Corpus Juris 837 and cases cited.) "Power or authority to control; superintendence; government." (Webster); "regulating power; restraining or directing influence; check; regulation." (Standard Dict.)

In Byrne vs. Drain, 127 Cal. 667, Coffey vs. Superior Court, 147 Cal. 525, and Dinan vs. Superior Court, 6 Cal. App. 222, where the constitutional provision that city charters should be "controlled by general laws" was under consideration, the following definition of the verb "control" was approved: "To exercise a directing, restraining or governing influence, direct, counteract, regulate."

The cases of Vale vs. Boyle and Crowe vs. Boyle already cited, construed these same words and declared that they were sufficient to grant the authority to contract. If they should be regarded as dicta the same cannot be said of McCarthy vs. Board of Supervisors 15 Cal. App. 576, 580, which directly holds that the word "control" in a similar statutory provision conferred power to make contracts. The reasoning of the Court there is directly applicable to the present case. That case involved the construction of subdivision 4 of section 4041 of the Political Code, which authorizes the Board of Supervisors of a county, on the advice of the County Surveyor and after advertising bids, in-

stead of letting a contract for the construction of a bridge, etc., "to order the work done or structure built by day's work "under the supervision and control of said surveyor," who shall be held responsible that the cost does not exceed the lowest responsible bid. Acting under this provision, the Board, after receiving bids, ordered a bridge built by the County Surveyor by day's work and directed him to purchase the necessary material therefor. This action was brought to enjoin the Surveyor and Supervisors from proceeding under this order. The court held that no such injunction should be granted, saying:

"It is perfectly apparent that the board did not exceed the privilege granted by said section unless in the command and direction to the surveyor to purchase material for the said structure, but even in this particular we are of the opinion that the action of the board was entirely within the purview of said provision. The work is to be done, not simply under the 'supervision' but also under the 'control' of the surveyor. 'Supervision' implies oversight and direction. 'Control' must have been used to authorize additional power, such as is contained in one of its definitions, 'to exercise a restraining or governing influence over, to regulate.' How could the surveyor govern or regulate the construction of the bridge without a supervision over the employment of labor and the purchase of material? He could supervise the structure by directing its completion in accordance with the plans and specifications. He could not 'control' it without a directing power as to the cost. This power manifestly could not be exercised without the

privilege of employing the labor and purchasing the material. . . .

"We can see nothing in the position of the respondents that implies an unwarranted delegation of authority on the part of the supervisors. In fact, there is no delegation of authority whatever by the supervisors. . . . When they have ordered the surveyor to do the work, the legislature has given him express authority and made it his duty to comply with the order."

Following the above decisions and accepting these definitions of the terms used in the charter, I hold that the investiture of the Board of Public Works with the charge, superintendence and control of the matters specified in Section 146 carries with it the power to make contracts in regard thereto. This power must, of course, be exercised in conformity to the regulations made in the charter as to the making of contracts and also subject to the power of the council to pass ordinances making further regulations.

The introductory clause of section 146 applies to all matters enumerated in the six subdivisions thereof, and if the board is thereby given power to contract, such power extends to all of those matters, which include the design and construction of sewers, the use of streets, the cleaning, sprinkling, lighting and repair of streets, the disposal of garbage and sewage, and other matters. Defendants argue that such a construction of the charter gives the board powers more extensive than should be conferred on an administrative body, and powers which it has not heretofore

exercised in practice. As to the latter point, there is nothing before the court except matters of which it may take judicial notice. If such notice may be taken of the practice of the city officials in such matters, the court will discover that the practice is not uniform, and that in pursuance of section 146 of the charter, which has a general introductory clause exactly like that of section 146, except that it omits the provision as to the adoption of ordinances, the Board of Public Works took entire charge of the building of the Los Angeles Acqueduct and of a large amount of harbor improvement work, letting all contracts therefor without authority from the Council. I doubt, however, whether this is a matter for judicial notice. In any case, a construction of the charter by the city officials could not be permitted to override the definite provisions of the charter, and still less could it do so when that construction has not been uniform.

The argument as to the extent of the powers reposed in the Board of Public Works is for the charter making power rather than the court. But it may be said that most of the matters enumerated in section 146 are such as would be paid for out of the annual revenue of the city. By the provisions of section 211 all appropriations of such revenue for the use of the various officers and boards are made by the Council. Section 207-c provides that "each officer, commission, or board shall have authority to expend and make contracts involving the expenditure of one-twelfth of the fund apportioned to such officer, commission or board during each month of the fiscal year, and no more unless expressly author-

ized by the Council." This gives the Board of Public Works limited authority to contract as to its share of the annual revenue. All such contracts would be subject also to the following proviso of section 207:

"Every contract involving the expenditure of more than one thousand dollars shall be first authorized by a two-thirds vote of the Council, except contracts made by the Board of Library Directors and contracts requiring payment from funds derived from the sale of water, or electric power, or bonds of the city, or from the Harbor Revenue Fund."

The exception prevents this provision from applying to the present contract, which requires payment from bond funds. In view of these provisions, by which the Council has entire control of the amount which the Board of Public Works can expend in the course of its usual and ordinary functions, the defendants' fear that the board might, under the construction of section 146 herein adopted, involve the city in heavy indebtedness which the Council would have to find the means of paying, is quite unfounded. In the case of a city hall or other improvement to be paid for from the proceeds of a bond issue, the amount of the bond issue imposes a limit to the amount which can be expended; and that it likewise within the control of the Council, which fixes the amount thereof before it is submitted to the voters.

Furthermore, section 11a of the charter gives the Council power, by ordinance, to issue in-

structions to any appointive, administrative board, relating to and consistent with its duties as prescribed by the charter. This provision would enable the Council to direct the action of the Board of Public Works, not only in regard to the expenditure of the annual revenue, but also in respect to any other matter within the jurisdiction of the Board, including the new city hall. Hence the construction I have adopted for section 146 does not entirely remove the Board of Public Works from the control of the Council or deprive the latter of the power to determine how and where the city hall shall be built, but merely requires the Council to embody its determinations on these matters in the form of ordinances. It is not necessary to decide at this time how far such ordinances could go, for the Council has enacted none; but I have no doubt that they could at least prescribe the terms of any contract to be made regarding the city hall, the size and plan of the building, the materials of which it is to be built, and many other details of its construction. The charter provisions just referred to do not authorize the Council to do these things otherwise than by ordinance, or to proceed independently of the Board, as they have attempted to do in the present case. The official act must be done by and in the name of the Board, even though it be obeying instructions from the Council.

The Council having attempted to make a contract which the charter authorizes to be made only by the Board of Public Works, that contract cannot bind the city and is void, and any payment made in pursuance of it would like-

wise be illegal and void. It is unquestioned that plaintiff, as a taxpayer of the city, may maintain an action to restrain such an illegal expenditure. (C. C. P. 526a). It is therefore ordered that the demurrers be overruled, with leave to the defendants to answer within ten days, and that a temporary injunction be granted as prayed for, on the plaintiff giving a proper bond in the sum of $5000.00, said bond to be filed within five days from date hereof, during which time the restraining order is hereby continued in force.

HARTLEY SHAW, Judge.