Mr. Terrence P. O'Brien City Attorney City of Vero Beach Post Office Box 1389 Vero Beach, Florida 32961-1389
Dear Mr. O'Brien:
You ask substantially the following questions:
 (1) May the City of Vero Beach amend its charter to prohibit beach restoration involving the placement of sand on municipally-owned beaches in amounts in excess of that necessary to protect life or property during a storm or natural disaster, unless authorized by a local referendum?
 (2) Does failure to comply with the reporting and disclosure requirements of s. 106.071(1), F.S., render invalid a petition which proposes a charter amendment?
In sum, I am of the following opinion:
 (1) The Legislature, in Ch. 161, F.S., preempts to the state through the Department of Natural Resources the authority to regulate beach and restoration and renourishment, thereby precluding the City of Vero Beach from amending its charter to require voter approval before beaches owned by the city may be restored.
 (2) This question involves an interpretation of The Florida Election Code and, therefore, should be addressed to the Division of Elections in the Department of State.
Question One
The Legislature makes a declaration of public policy that it is `a necessary governmental responsibility to properly manage and protect Florida beaches from erosion and that the Legislature make provision for beach restoration and renourishment projects.'[1]
Implementing this public policy, the Legislature recognizes that beach erosion is a statewide problem most efficiently addressed by a state-initiated program of beach restoration and beach renourishment. The Legislature provides that the state, through the Department of Natural Resources (department), shall determine those beaches which are critically eroding and in need of restoration and renourishment, and may authorize expenditures to pay up to seventy-five percent of the costs for restoring or renourishing such beaches.[2] Furthermore, the department is statutorily designated as the beach and shore preservation authority for the state.[3] Section 161.161, F.S., sets forth the procedure for approval of beach restoration projects. Pursuant to this section, the Division of Beaches and Shores (division) of the department develops and maintains a comprehensive long-term management plan for the restoration of the state's critically eroding beaches.[4] As part of the plan, the division specifies design criteria for beach restoration and renourishment projects.[5]
In determining which beaches are in need of restoration or renourishment, the division must consider and balance certain criteria, one of which is the extent of public support for the project.[6]
After approval by the head of the department, the projects are submitted to the board of trustees which makes the determination of whether projects recommended by the department should be undertaken.[7] If the trustees decide a plan should be pursued, a survey of the shoreline is made to establish the area of beach to be protected by the project and to locate an erosion control line.[8] The `erosion control line' marks the landward extent of the state's claim of sovereign ownership.[9] A public hearing is then noticed and held to allow any person who has an interest in the beach erosion control project to express their views regarding the necessity of the project and the location of the proposed erosion control line.[10]
Section 161.161(7), F.S., provides:
 In no event shall the department undertake a beach restoration or beach renourishment project . . . where a local share is required without the approval of the local government or governments responsible for that local share.
If a shore erosion emergency is declared by the Governor, however, the state, through the department may spend whatever state funds are available to alleviate shore erosion.[11]
The foregoing shows a comprehensive program whereby the state, through the Department of Natural Resources, is the authority vested with control of the restoration and renourishment of beaches. Concurrently, local governments are allowed to withhold their approval on those projects where the costs are shared by the state and the local government, thereby preventing such projects from being undertaken. I cannot conclude, however, that the local government's ability to veto certain beach restoration and renourishment projects authorizes it to ban beach restoration and renourishment, absent voter approval, when the state could otherwise proceed with the project without the local government's approval.
Where the Legislature has prescribed how a certain thing, such as beach restoration and renourishment, shall be done, it is, in effect, a prohibition against its being done in any other way.[12]
Here, the Legislature has provided the means for beach restoration and renourishment statewide by the Department of Natural Resources, which precludes a municipality, such as the City of Vero Beach, from enacting local laws regarding beach restoration and renourishment conflicting with Ch. 161, F.S.[13]
Question Two
The Secretary of State is the chief election officer of the state and must `[o]btain and maintain uniformity in the application, operation, and interpretation of the election laws.'[14] It would appear, therefore, that the Division of Elections in the Department of State would be the appropriate source for an interpretation of s. 106.071, F.S., contained in The Florida Election Code.
Sincerely,
Robert A. Butterworth Attorney General
[1] Section 161.088, F.S.
[2] See, s. 161.101(1), F.S. See also, s. 161.053, F.S., allowing the Department of Natural Resources to establish coastal construction control lines after determining that such lines are necessary for the protection of upland properties and the control of beach erosion and prohibiting construction or excavation seaward of designated coastal construction lines except as otherwise provided in Ch. 161, F.S.
[3] See, s. 161.101(2), F.S., which in addition provides that the executive director of the department at his own initiative may take all necessary steps as soon as practicable and desirable to implement the provisions of this chapter.
[4] See, s. 161.161(1), F.S.
[5] See, s. 161.161(1)(c), F.S.
[6] See, s. 161.161(2)(a)-(k), F.S., enumerating the criteria which must be considered by the division in recommending a beach for restoration or renourishment.
[7] See, s. 161.161(4), F.S.
[8] Id.
[9] Section 161.151(3), F.S., defines `[e]rosion control line' as `the line determined in according with the provisions of ss.161.141-161.211 which represents the landward extent of the claims of the state in its capacity as sovereign titleholder of the submerged bottoms and shores of the Atlantic Ocean, the Gulf of Mexico, and the bays, lagoons and other tidal reaches thereof on the date of the recording of the survey as authorized in s.161.181.'
[10] See, s. 161.161(5), F.S.
[11] See, s. 161.111, F.S.
[12] See, Alsop v. Pierce, 19 So.2d 799, 805 (Fla. 1944).
[13] See, City of Miami Beach v. Rocio Corporation, 404 So.2d 1066
(3 D.C.A. Fla., 1981), pet. for rev. den., 408 So.2d 1092 (Fla. 1981). Cf., Pace v. Board of Adjustment, Town of Jupiter Island,492 So.2d 412, 415 (4 D.C.A. Fla., 1986) (while the scheme of regulation in Ch. 161, F.S., may be pervasive with respect to municipal authority over shoreline areas seaward of the coastal construction control line, it does not preempt municipal authority in the regulation of street level zoning).
[14] See, s. 97.012, F.S.