Mr. Michael S. Mullin County Attorney Nassau County Post Office Box 1563 Fernandina Beach, Florida 32034
Dear Mr. Mullin:
As County Attorney you have asked the following question on behalf of the Board of County Commissioners of Nassau County:
May Nassau County use tourist development tax funds pursuant to s.125.0104(5)(a)4., F.S., to fund: (a) the construction of beach parks; (b) additional Sheriff's patrols and lifeguards on the beach; (c) the buildings and maintenance of sanitary facilities on or near the beach?
In sum:
Nassau County is not authorized by s. 125.0104(5)(a)4., F.S., to use tourist development tax revenues to construct beach parks, fund additional law enforcement patrols or lifeguards on the beach, or build and maintain sanitary facilities on or near the beach.
Section 125.0104, F.S., the "Local Option Tourist Development Act,"[1] authorizes any county in Florida to impose a tax on short-term rentals of living quarters or accommodations in "any hotel, apartment hotel, motel, resort motel, apartment, apartment motel, roominghouse, mobile home park, recreational vehicle park, or condominium"[2] within the county unless such activities are exempt pursuant to Ch. 212, F.S.
Subsection (5) of the act sets forth the purposes for which revenues from the tourist development tax may be expended.
Pursuant to s. 125.0104(5)(a), F.S.:
All tax revenues received pursuant to this section by a county imposing the tourist development tax shall be used by that county for the following purposes only: 1. To acquire, construct, extend, enlarge, remodel, repair, improve, maintain, operate, or promote one or more publicly owned and operated convention centers, sports stadiums, sports arenas, coliseums, or auditoriums within the boundaries of the county . . . ; 2. To promote and advertise tourism in the State of Florida and nationally and internationally; 3. To fund convention bureaus, tourist bureaus, tourist information centers, and news bureaus as county agencies or by contract with the chambers of commerce or similar associations in the county; or 4. To finance beach improvement, maintenance, renourishment, restoration, and erosion control, including shoreline protection, enhancement, cleanup, or restoration of inland lakes and rivers to which there is public access.[3] (e.s.)
Where a statute enumerates the things upon which it is to operate or forbids certain things, it is ordinarily to be construed as excluding from its operation all things not expressly mentioned.[4] Applying this rule to the instant situation, the specific enumeration in s. 125.0104(5)(a)4., F.S., of those projects for which tourist development tax revenues may be spent implies the exclusion of others.[5]
According to your letter, the county proposes to construct beach parks which will provide such items as bath houses, picnic shelters, sanitary facilities, and parking areas. I would note that s. 125.0104(5)(a)1., F.S., specifically authorizes the construction of artificial structures such as publicly owned and operated convention centers, sports stadiums, sports arenas, coliseums, or auditoriums within the county. Thus, the Legislature has provided for using tourist development tax revenues to construct certain facilities which do not include beach parks.
You ask whether Nassau County may use tourist development tax moneys to provide additional law enforcement and lifeguards on the beach. In AGO 90-14 this office, considered whether Monroe County was authorized to use such funds for extra police protection in connection with special events. This office concluded that "[s]ince the provision of law enforcement by the county is a general governmental function owed to the public at large, such revenues (from the tourist development tax) may not be used to generally fund law enforcement within the county or to fund such functions during special events or holidays."
Monroe County relied on s. 125.0104(5)(a)2., F.S., to provide authority for the expenditure of these funds for additional law enforcement asserting that this would promote tourism. However, as stated in AGO 90-14, the provision of law enforcement functions owed to the public at large, whether generally or at special events or during certain holidays, does not have the promotion and advertisement of tourism as its primary purpose.
Moreover, I cannot conclude that the provision of lifeguards or additional law enforcement for Nassau County beaches constitutes "beach improvement, maintenance, renourishment, restoration, and erosion control"[6] within the contemplation of s.125.0104(5)(a)4., F.S., such that tourist development tax revenues may be used to fund such services. The terms of this section should be construed in connection with, and their meaning ascertained by reference to, the other words and phrases of the section with which they are associated.[7]
Reading the terms "beach improvement, maintenance, renourishment, restoration, and erosion control" together, it appears that s.125.0104(5)(a)4., F.S., relates to the actual, physical nature of the beach and does not contemplate the construction of artificial structures upon the beach or otherwise authorize activities which do not protect or enhance the physical nature of the beach. Thus, the construction of artificial structures generally would appear to be beyond the scope of expenditures authorized in s.125.0104(5)(a)4., F.S.
I note that you also refer to the construction of dune walkovers in your letter. Under certain circumstances beach dune overwalks or dune protective walkways have been recognized by the state to constitute a method of beach preservation and erosion control.[8]
Thus, there may be instances where the construction of such walkovers is to secure the physical integrity of the beach and as a valid method of erosion control. In such instances, where the county has made the appropriate legislative findings, the expenditure of tourist development tax revenues may be permissible under s. 125.0104(5)(a)4., F.S.
The county, however, may wish to seek legislative clarification on its authority to make expenditures pursuant to this section. Moreover, as this office has previously stated, the determination as to whether a particular expenditure satisfies the requirements of s. 125.0104, F.S., is the responsibility of the governing body of the county and cannot be delegated to this office.[9]
Sincerely,
Robert A. Butterworth Attorney general
RAB/tgh
[1] Section 125.0104(1), F.S.
[2] Section 125.0104(3)(a), F.S.
[3] And see, s. 125.0104(5)(b), F.S., which authorizes counties with a population of less than 500,000 to use the revenues for the acquisition, construction, improvement, operation, and promotion of museums, zoological parks, fishing piers or nature centers; and s. 125.0104(5)(c), F.S., specifying the circumstances under which the revenues may be used to secure and liquidate revenue bonds issued for the purposes set forth in subparagraphs (a)1. and (a)4.
[4] See, AGO 88-49, in which this office advised Monroe County that the expenditure of tourist development tax revenues was limited to those purposes set forth in the statute. And see, Thayer v. State, 335 So.2d 815, 817 (Fla. 1976).
[5] And see, Dobbs v. Sea Isle Hotel, 56 So.2d 341, 342 (Fla. 1952), and Alsop v. Pierce, 19 So.2d 799, 805-806 (Fla. 1944), for the proposition that a legislative direction as to how a thing shall be done is, in effect, a prohibition against its being done in any other way.
[6] Compare, s. 161.58(3), F.S., relating to beach and shore preservation, which authorizes counties to impose a reasonable fee for vehicular traffic access to county beaches and providing that such revenues "shall be used only for beach maintenance; beach-related traffic management and parking; beach-related law enforcement and liability insurance; or beach-related sanitation, lifeguard, or other staff purposes. . . ." with s.125.0104(5)(a)4., F.S. And compare, SB 1286 and HB 2935, two bills which failed during the 1990 Florida Legislative Session, which would have authorized the expenditure of tourist development tax revenues "[t]o enhance public safety and security in tourist districts and facilities" with s. 125.0104(5)(a)4., F.S.
[7] See generally, 82 C.J.S. Statutes s. 331 ("In accordance with the rule or maxim of noscitur a sociis doubtful words and phrases used in statutes are construed in connection with, and their meaning is ascertained by reference to, the words and phrases with which they are associated.") e.s.
[8] See, Rule 16B-36.004, F.A.C., setting forth projects including dune protective walkways and beach dune overwalks which are eligible for financial assistance under the Beach Erosion Control Assistance Program and Ch. 161, F.S., relating to beach and shore preservation.
[9] See, AGO 83-18.