Mr. Larry M. Haag Citrus County Attorney 111 West Main Street, Suite B Inverness, Florida 34450
Dear Mr. Haag:
You ask the following question:
May the county use tourist development tax dollars collected pursuant to section 125.0104, Florida Statutes (1996 Supplement), to construct an artificial reef to provide diving and snorkeling opportunities in waters bordering the county?
In sum:
The county may use tourist development tax revenue to fund the construction of an artificial reef, if the governing body of the county makes the appropriate legislative finding that the project promotes tourism as required by section 125.0104, Florida Statutes (1996 Supplement).
Section 125.0104, Florida Statutes, is the "Local Option Tourist Development Act." The act authorizes a county to impose a tax on short-term rentals of living quarters or accommodations in "any hotel, apartment hotel, motel, resort motel, apartment, apartment motel, roominghouse, mobile home park, recreational vehicle park, or condominium" within the county unless such activities are exempt pursuant to Chapter 212, Florida Statutes.
Subsection (5) of the act sets forth the authorized uses of revenue generated by the tourist development tax. Pursuant to section 125.0104(5)(a), Florida Statutes (1996 Supplement):
"(a) All tax revenues received pursuant to this section by a county imposing the tourist development tax shall be used by that county for the following purposes only:
1. To acquire, construct, extend, enlarge, remodel, repair, improve, maintain, operate, or promote one or more publicly owned and operated convention centers, sports stadiums, sports arenas, coliseums, or auditoriums, or museums that are publicly owned and operated or owned and operated by not-for-profit organizations and open to the public, within the boundaries of the county . . . ;
2. To promote and advertise tourism in the State of Florida and nationally and internationally; . . .
3. To fund convention bureaus, tourist bureaus, tourist information centers, and news bureaus as county agencies or by contract with the chambers of commerce or similar associations in the county . . .; or
4. To finance beach park facilities or beach improvement, maintenance, renourishment, restoration, and erosion control, including shoreline protection, enhancement, cleanup, or restoration of inland lakes and rivers to which there is public access as those uses relate to the physical preservation of the beach, shoreline, or inland lake or river. . . . "(e.s.)
Moreover, section 125.0104(5)(b), Fla. Stat. (1996 Supplement), allows counties with a population of less than 600,000 to also use tourist development tax revenues to "acquire, construct, extend, enlarge, remodel, repair, improve, maintain, operate, or promote one or more zoological parks, fishing piers or nature centers which are publicly owned and operated or owned and operated by not-for-profit organizations and open to the public." According to information available to this office, the population of Citrus County is below 600,000; thus allowing the county to expend its tourist development tax revenues for these additional specified projects.[1]
Where a statute enumerates the things upon which it is to operate or forbids certain things, it is ordinarily to be construed as excluding from its operation all things not expressly mentioned.[2] The specific provisions in the statute limit the use of revenues generated from the tourist development tax to the purposes specified therein.[3]
This office has consistently concluded that tourist development tax revenues may only be used for the purposes enumerated in section 125.0104, Florida Statutes.[4] As this office has noted, section 125.0104, Florida Statutes, specifically authorizes the construction of artificial structures such as publicly owned and operated convention centers, sports stadiums, sports arenas, coliseums, or auditoriums within a county.[5] Also recognized as structures that may be funded by tourist development tax revenues in counties with less than 600,000 population[6] were museums, zoological parks, fishing piers or nature centers which are publicly owned and operated.
In this instance, the county proposes to construct an artificial reef or reefs within coastal waters bordering the county to afford diving and snorkeling activities during the summer months. The county's tourist development council contends that the reef(s) will provide a tourist attraction to substitute for the loss of the area's summer scalloping season which was closed in 1995. Moreover, the council's position is that the reef(s) will enhance coastal waters by providing increased fisheries and improved aquatic habitat.
This office has been provided additional information from a private source suggesting that the proposed artificial reef is part of a larger scheme to develop an aquatic nature center.[7]
While the county has not indicated its intention to develop such a facility, nor has the question of whether an aquatic nature center is a "nature center," as that term is used in section125.0104(5)(b), Florida Statutes (1996 Supplement), been presented, it appears that an aquatic nature center could be characterized as a nature facility such that tourist development taxes may be used for its development. Ultimately, however, the determination of whether a particular expenditure satisfies the requirements of section 125.0104, Florida Statutes, is the responsibility of the governing body of the county and cannot be delegated to this office.[8]
Based upon the county's determination that the construction of an artificial reef will promote tourism, tourist development tax revenues may be used to fund such a project. Moreover, it would appear that an aquatic nature center that may develop as a natural or planned consequence of constructing multiple artificial reefs falls squarely within those projects contemplated by section125.0104(5)(b), Florida Statutes (1996 Supplement).
Accordingly, it is my opinion that, based upon the appropriate legislative finding by the governing body of the county that such a project promotes tourism, construction of an artificial reef in order to promote snorkeling and diving or as a basis for improving fishing in the coastal waters to attract tourists may be funded by tourist development tax revenues collected pursuant to section125.0104, Florida Statutes (1996 Supplement).
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] Population estimates generated by the Governor's Office pursuant to s. 186.901, Fla. Stat., effective April 1, 1996, place the population of Citrus County at 107,819. The Florida Association of Counties 1997 Directory (15th Ed.), reports the population for Citrus County at 107,889.
[2] See, Thayer v. State, 335 So.2d 815, 817 (Fla. 1976). Andsee, Op. Att'y Gen. Fla. 88-49 (1988) (the expenditure of tourist development tax revenues is limited to those purposes set forth in the statute).
[3] See, Dobbs v. Sea Isle Hotel, 56 So.2d 341, 342 (Fla. 1952), and Alsop v. Pierce, 19 So.2d 799, 805-806 (Fla. 1944) (legislative directive as to how a thing should be done is, in effect, a prohibition against its being done in any other way).
[4] See, Ops. Att'y Gen. Fla. 86-68 (1986) (tourist development tax revenues may be used for beach cleaning and maintenance) and 87-16 (1987) (tourist development tax revenues may be used to improve, maintain, renourish or restore public shoreline or beaches of inland freshwater lake). Cf., Ops. Att'y Gen. Fla. 91-62 (1991) (construction of boat ramps and parking facilities in proximity to inland lakes and rivers not a proper use of tourist development tax revenues), 90-55 (1990) (tourist development tax revenues may not be used to construct beach parks, fund additional law enforcement patrols or lifeguards on the beach, or to build and maintain sanitary facilities on or near the beach), and 88-49 (1988) (no authority to use tourist development tax revenues to acquire real property for beach access).
[5] See, Op. Att'y Gen. Fla. 90-55 (1990).
[6] Subsection (5)(b), Fla. Stat., was amended by s. 3, Ch. 92-175, Laws of Florida, by substituting "600,000 population" for "500,000 population" and deleting the reference to "museums." Section 125.0104(5)(a)1., Fla. Stat., was amended by the same law to allow all counties to use tourist development tax revenues for "museums that are publicly owned and operated or owned and operated by not-for-profit organizations and open to the public."
[7] Letter from Mr. Jim Dicks of Port Paradise Resort, dated June 24, 1997.
[8] See, Op. Att'y Gen. Fla. 83-18 (1983).