JOHN T. ALSOP, JR., as Mayor, etc., v. GEORGE A. PIERCE, et al., as and constituting the City Commission of the City of Jacksonville, etc.

19 So. (2nd) 799          June Term, 1944
November 21, 1944          En Banc
Rehearing denied December 14, 1944

*Charles Cook Howell, McCarthy, Lane & Howell* and *L. R. Milton,* for appellant.

*John E. Mathews* and *P. H. Odom,* for appellees.

SEBRING, J:

The mayor of the City of Jacksonville has brought this suit against the members of the city commission, under the declaratory judgment statute of this State, to obtain a judicial declaration of the respective rights and powers of the parties as they appertain to the direction and control of the Jacksonville Police Department.

The controversy grows out of the promulgation by the city commission of certain rules and regulations for the governance of the city police department, designated in pleadings and briefs as Rules 69, 71 and 73, respectively. These rules, about which more will be said later, contain provisions to the effect that the chief of police of the city shall be solely responsible for the assigning members of the police force to duty; that the mayor, in directing and controlling the police force, preserving the peace and enforcing ordinances of the city, shall issue his orders to the police department only through the chief of police in accordance with rules framed by the city commission; that the mayor shall report all suspensions of police officers to the city commission for approval or disapproval.

Shortly after passage of Rules 69, 71 and 73, the mayor of the City of Jacksonville, in pursuance of what he conceived to be his lawful duty "to take care that all laws and ordinances concerning the city are duly respected and observed," as is provided by city charter, directed the chief of police of the city to increase the number of police officers on the "vice-squad" watches of the police department from two to three, and to assign some member of the force other than one

Sidney O'Brien to the "homicide squad" of the department, to which squad O'Brien was then assigned. The chief of police refused to follow the directions of the mayor in each particular on the ground that under the rules promulgated by the city commisison the assigning of police officers and fixing their places of duty was the function and responsibility of the police chief, solely, and not subject to direction or interference by the mayor's office. Upon receiving notice of the chief's refusal to comply with the directions given, the mayor suspended him from office for the period of thirty days without pay, on the charges of insubordination, misconduct in office and neglect of duty. At about the same time the mayor submitted a written report of his action in the premises to the city commission. Thereafter, at the request of the chief of police, the city commission held a hearing upon the charges preferred. At the close of the hearing the city commission found the police chief not guilty of the charges and returned him to duty.

The mayor alleges in his petition that by reason of the action of the commission in adopting Rules 69, 71 and 73, and in upholding the chief of police in his refusal to obey the orders given him by the mayor, a conflict and clash of authority has arisen between the mayor's office and the members of the city commission with reference to their respective powers and duties. It is charged by the mayor that the rules promulgated by the city commission trench upon the authority granted him under the city charter to "direct and control the police force," and are an unlawful attempt by that body to arrogate to itself power and jurisdiction now vested exclusively by law in the office of mayor. The members of the city commission deny the charge, and say that the rules so promulgated by them are in the exercise of authority vested by law in the city commission. The question is whether the rules as framed transcend the city commission's power to make them under the city charter; for only from such law do the municipal officers of the city derive their power and authority. A proper determination of the question calls for a construction of the city charter.

The statutory law pertaining to the police power of the

City of Jacksonville is not as clear as could be. The municipal law for the governance of the city is not contained in a single compact charter, with the duties and functions of the several departments of government clearly defined. On the contrary, it must be looked for in at least five more or less conflicting and ambiguous statutes, including the original charter of 1887, and amendments subsequently passed by the Legislature. We have given much study to the controlling law of the City. Such provisions of the statutes as we think are presently in force and pertain to the question at hand are as follows:

"The mayor shall have power [1] to preserve the peace within the city; . . . [2] direct and control the police force, under such rules and regulations as the City Commission may prescribe; . . . [3] to suspend any city officer for misconduct in office or neglect of duty, reporting his action with his reasons therefor in writing to the next meeting of the City Council for its approval or rejection; but he shall not have the power to suspend members of the City Commission or of the City Council, or any officers under them, except members of the police department; . . . [4] He shall take care that all laws and ordinances concerning the city are duly respected. . . ." Art. II of Ch. 3775 Acts of 1887 as amended by Sec. 3 of Ch. 8281, Sp. Acts of 1919.

The City Commission shall have power [1] to organize the police force; Ch. 3775 Acts of 1887 as amended by Ch. 4872 Acts 1899; Ch. 6357 Acts 1911; Ch. 7659 Acts 1917; [2] The organization, number and compensation of members of the police force . . . shall be regulated and controlled by the City Commission; Ch. 4872 Acts 1899 as amended by Ch. 7659 Acts 1917; [3] "The members of the police force shall be appointed by the City Commission and confirmed by the City Council, as now provided by law;" Ch. 3775 Acts 1887 as amended by Ch. 4872 Acts 1899; Ch. 7659 Acts 1917; [4] "The City Commission, shall establish general provisions and requirements for the control and suspension of members of said [police] department, by the Chief of Police and other officers of said department, but no member who has served one year or more shall be removed from office without cause

and without having been given a hearing by the City Commission on written charges for his removal from office. On the trial of a member of the police force for removal from office, the City Commission may suspend him from office without pay, reduce him in work or remove him from office, as they may deem just and proper." Ch. 3775 Acts 1887 as amended by Ch. 4872 Acts 1899; Ch. 7659 Acts 1917; [5] The City Commisison may prescribe "rules and regulations" under which the mayor shall "direct and control the police force." Ch. 8281 Acts 1919.

It is our duty to so give meaning to all of the words of the statutes cited as not to cripple or impair the powers or functions. of any officer or department of the municipal government, if such can be done without doing complete violence to the statutes. It will be observed by reference to the statutes that the mayor is invested with power "to direct and control the police. force" but that such power is to be exercised *"under* such rules and regulations as the city commission may *prescribe."* What did the Legislature mean by this provision? The word "under" is sometimes used in its literal sense of "below in position," indicating a condition of inferiority or subservience to some superior power or higher authority. Mills v. Stoddard, 8 How. 345, 12 L. Ed. 1107; 65 C.J. 1202; Bouvier's Law Dictionary. Again the word has been used as meaning "subject to" or "in conformity with," denoting curtailment or restriction of, but nevertheless agreement or congruity with, something else to which it is made applicable. Eslinger v. Pratt, 14 Utah 107, 46 P. 763; Webster's New International Dictionary, 2nd Ed. Unabridged. The word "prescribe" means "to lay down authoritatively. as a guide, direction, or rule of action." It is sometimes used synonymously with the words "limit, control, order, guide." Webster's New International Dictionary, 2nd Ed. Unabridged. As with most words that are not purely technical, the meaning to be given the two words whose definitions we have indicated often depends upon the connection in which they are used with reference to the subject matter treated, and must be derived from the context of the material.

We cannot believe that in conferring the general power upon the mayor "to direct and control the police force" the Legislature intended that the power should be exercised in complete subservience or subordination to the city commission, for if such had been the legislative intent there would have been no real purpose in conferring the power upon the mayor at all. On the other hand, it manifestly was not the intent of the Legislature that the mayor's power to direct and control the police force was to be unfettered and uncontrollable. If such had been the intent the Legislature would not have curtailed the power—as undoubtedly it has—by subjecting it to the limitation that it should be exercised only *under* rules and regulations *prescribed* by the city commission.

The charter of the City of Jacksonville has placed in the mayor the power "to preserve the peace within the city" and to "take care that all laws and ordinances concerning the city are duly respected." It is our considered opinion that when the Legislature conferred upon the mayor the power of direction and control over the police force it did so with the one end in view, that as chief executive of the city the mayor should have at hand the means by which to preserve the peace and to demand from the public obedience to the law. But we hardly think that by conferring such power upon him it was the intent of the Legislature that the power conferred should extend to every small detail of operation within the department, or that it should, in general, be exercised directly upon the individual members of the police force, as distinguished from the department as a whole. Such exercise of authority would hardly be necessary for the broader purposes of the general power conferred, and, if pursued too far, could undoubtedly breed such confusion and disorder as to ultimately destroy the efficiency of the department, and, perhaps, defeat the very purposes for which the department was established by the Legislature. It is our conclusion, therefore, that by the power conferred upon the mayor "to direct and control the police force *under* such rules and regulations as the city commission may *prescribe*," is meant a general supervisory direction and control by the mayor to be

subject to such reasonable rules and regulations for the governance of the department as the rule-making body in its considered judgment may lay down, in recognition of the general power conferred upon the mayor.

Under such construction of the city charter neither the mayor's office nor the city commission is wholly superior or subordinate to the other; each has its lawful sphere of operation. On the one hand, the mayor, as chief executive of the city, has the authority by virtue of the grant of executive power to him to "take care that all laws and ordinances concerning the city are duly respected," to guide the police department in the construction to be placed upon the statutes and the ordinances of the city pertaining to the exercise of the police power conferred upon the city by the Legislature, in order to secure uniform execution of the laws. By virtue of his executive power the mayor has the power of direction and control over the activities of the police force, as such, in preserving the peace and enforcing the laws. As chief executive of the city the mayor may require of the department and the members thereof full, faithful, honest and diligent execution of the laws in the exercise of the police power of the city; being ever vigilant, himself, to observe the manner in which the members of the department discharge their proper duties. If an officer, or member of the police force, fails to act, or acts improperly, in the performance of his official duties, the mayor has authority to suspend him, prefer charges for his removal, or pursue such other disciplinary course as the prevailing law may permit or require.

On the other hand, the city commission, in addition to its charter powers in the matter of regulating the organization, number and compensation of officers of the department, in appointing the personnel, and in trying them for removal from office, may, to the extent it sees fit to do so, adopt such rules and regulations for the internal governance of the department as will more fully assure to the mayor and the citizens an efficient and disciplined law enforcement agency available for the enforcement of law and preservation of peace in the municipality. In our opinion this is the way the

Legislature intended that the two departments of government of the City of Jacksonville should function under the statute, in exercising dual control and authority over the affairs of the Jacksonville Police Department.

Of course, rules and regulations framed by the city commission in pursuance of the rule-making power conferred, must be in recognition and not in contravention, of the general charter power conferred on the mayor, to direct and control the police force for the preservation of the peace and the enforcement of law. If such were not the case, it would lie within the reach of the rule-making body in every instance to frustrate the statute by the simple expedient of promulgating rules, the effect of which would render the power upon which they were intended to operate impotent and completely meaningless. Such course may not be lawfully pursued. The rule-making power may not thus be used to subvert the broader purposes of the statute which created it. But within the limits we have defined, the city commission is free to exercise its rule-making power in the governance of the department, in the public interest and for the general welfare of the municipality.

Considering, now, more closely the rules involved in this dispute we find that Rule 69, so far as is material here, is as follows:

"The Chief of Police shall be the chief executive officer of the Police Department, and shall be responsible for the observance and enforcement of all laws and ordinances, and the rules and regulations of the Police Department. He shall, as the Chief executive of the Police Department, enforce the directions of the Mayor under such rules and regulations as the City Commission may prescribe. The Chief of Police shall have authority over all officers and employees of the Police Department, and shall be responsible for the competent and efficient performance of the police duty. It shall be the sole duty and responsibility of the Chief of Police to assign the various officers of the Police Department, and to prescribe and fix their particular places of duty. It shall be the duty of the Chief of Police to enforce the orders of the Mayor with reference to enforcement of laws and

ordinances of the City, and the keeping of the peace in the city, and in so doing shall call into service and make assignments of officers of the Department in such numbers and at such places as may be necessary. With reference to the organization of the department, it shall be the duty of the Chief of Police to carry out the orders, rules and regulations of the City Commission. . . ."

Rule 71 provides, among other things, that:

"The Mayor, in directing and controlling the Police Department, enforcing laws, and preserving the peace within the City, shall issue his order to the Chief of Police . . . and in accordance with the rules and regulations for the government of the Department as prescribed by the City Commission.

"The Mayor may require special services of any officer or officers of the Police Department for any particular work or duty, when he deems it necessary, and his requests for such services shall be made to the Chief of Police, provided, however, that such requests for special service shall not disorganize the department. If the work, service, or duty required is to last or will last more than 30 days, such request shall be submitted to the City Commission for its approval."

The mayor objects to that portion of Rule 69 which gives to the chief of police the sole duty and responsibility of assigning the various officers of the police department, and prescribing and fixing their places of duty, on the ground that it is an unwarranted encroachment upon his own vested charter power to "direct and control the police force." He says that he cannot "preserve the peace" or see to it that "all the laws and ordinances" of the city are enforced and obeyed—as he is commanded by the charter—unless in the "direction and control" of the police department he may assign specific duties to specific policemen without the previously obtained approval of the chief of police acting in pursuance of rules and regulations promulgated by the city commission. The mayor objects to that portion of Rule 71 which requires him in the preservation of the peace and enforcement of laws and ordinances to issue his orders to the

police department through the chief of police in accordance with rules and regulations for the government of the department as prescribed by the city commission. He says that this is an attempt to deprive him of the power to issue orders for the direction and control of the department except as he may be permitted to do so by rules and regulations promulgated by the city commission, and that the provision hampers and impedes him in the performance of the positive duty imposed by the charter, of preserving the peace and enforcing the laws in the City of Jacksonville.

We find ourselves unable to agree with either of these contentions. The city commission, by the formulation and adoption of Rules 69 and 71, has placed the chief of police at the head of the police department as its executive officer. The rules have vested him with some responsibility and authority for the internal management of the department. They have reposed in him some measure of discretion in disciplining members of the police force and in assigning them to places of duty. In full recognition of the charter power vested in the mayor to preserve the peace and enforce the laws, the rules require that orders given to the police department for that purpose shall pass through the office of the chief of police. These rules seem to be entirely consistent with the charter power conferred on the city commission to make rules and regulations subject to which the mayor may exercise his discretion and control over the police force. It does not appear that by their enforcement the mayor will in anywise be unduly hampered or impeded in the performance of his official duties. The preservation of peace and order in the municipality is a responsibility and duty of the highest importance. For the orderly and efficient ·maintenance of the police force and the discipline of its members for this municipal purpose there must, perforce, be some one responsible official within the department itself to whom, and from whom, orders for action within or by the department must emanate. Such official must of necessity be invested with some degree of responsibility and authority for decision if the department is to function properly. He must be given some latitude in the exercise of judgment and dis-

cretion, if he is to be held accountable for the orderly and efficient administration of the affairs of the department. We hold that the rules are within the power conferred upon the city commission by the Legislature.

Rule 73 provides that:

"The mayor may suspend any member of the police force . . . [but that in event of such action he] shall submit such suspension to the City Commission for approval or disapproval within 3 days after such suspension, and at the same time submit to the City Commission in writing the reason or reasons for such suspension. In acting upon such suspension the City Commission may approve the same and fix the time of suspension, whether with or without pay, or may reduce such officer in work or rank, or if in the opinion of the City Commission the charges are of sufficient gravity, may try him for removal from office in the manner and under the procedure provided by the City charter."

The mayor submits that Rule 73 is in excess of power granted to the city commission by the Legislature. We think that it is plainly so. As we construe the city charter, the mayor has authority to suspend any city officer, including members of the police department and excluding members of the city commission and city council and officers under them, for misconduct in office or neglect of duty. When he takes such action it is his statutory duty to report what he has done, with his reasons therefor, to the next meeting of the city council for its approval or rejection. It is entirely within the province of the Legislature to determine by what office or board, or in what precise or particular manner, certain corporate acts are to be exercised by the corporate officials. When the Legislature has prescribed the mode, that mode must be observed. When the controlling law directs how a thing shall be done that is, in effect, a prohibition against its being done in any other way. State ex rel. Murphy v. Barnes, 24 Fla. 29, 3 So. 433; State ex rel. Church v. Yeats, 74 Fla. 509, 77 So. 262; Weinberger v. Board of Public Instruction, 93 Fla. 470, 112 So. 253. The Legislature has settled on the city council as the department of the Jacksonville city government to determine whether suspen-

sions of police officers by the mayor shall be sustained or overruled. No allusion to the city commission as an approving or disapproving body of the mayor's official acts of suspension is made in the statute. It is beyond the power of the city commission, therefore, to enact a rule that will in its operation defeat the plain intent of the statute,, no matter how desirable such course may appear to be.

The only other question raised on this appeal needs a word before we conclude. The members of the Jacksonville City Commission, who are before this Court as appellees to this appeal, say that the controversy presented here is not one properly cognizable under the declaratory judgment act of this State. Sec. 62.09 Florida Statutes, 1941, as amended by Ch. 21280, Laws of Florida, 1943. In our opinion, it would be difficult to find a more appropriate case for the law permitting declaratory judgments. The city commission, in entire good faith, as we must assume, has promulgated rules by which the internal affairs of the Jacksonville Police Department are to be regulated and governed. The city commission insists upon their enforcement for what the commission conceives to be the best interests of the department and of the municipality. The mayor, in equal good faith, as we must assume, insists that the rules as framed so unlawfully impinge upon his charter powers as to hamper and impede him in the performance of his official duties. The city officials involved are in hopeless disagreement concerning the extent of the powers conferred upon the departments of government they represent, by the charter of the City of Jacksonville. As could well be expected, a dispute has arisen between the two departments of government. The public interest is involved. The public may suffer if the conflict is prolonged. The determination of the questions posed will undoubtedly promote the public welfare by removing the clash and confusion. With the disputed provisions of the charter construed there is some likelihood that the contending parties will be able to act in harmony in the future, with reference to the governance of the police department, if they will but keep in mind that when dual authority is conferred complete harmony between the acting parties is contemplated.

198

We think, therefore, that this is clearly a case for the declaratory judgment statute.

The decree appealed from is affirmed in part and reversed in part, with directions that upon the going down of the mandate a decree be entered in the court below in accordance with the views expressed in this opinion.

It is so ordered.

BUFORD, C. J., TERRELL, BROWN, CHAPMAN and THOMAS, JJ., concur.

ADAMS, J., absent.