Mr. Randy Ludacer County Attorney Monroe County 310 Fleming Street, Room 29 Key West, Florida 33040
Dear Mr. Ludacer:
You have asked substantially the following question:
 May Monroe County use tourist development tax funds pursuant to s. 125.0104(5)(a)4., F.S., to acquire real property to provide beach access for the public?
In sum:
 Monroe County is not authorized by the provisions of s. 125.0104(5)(a)4., F.S., to use tourist development tax revenues to acquire real property for public beach access.
According to your letter, Monroe County has been awarded a grant by the Department of Natural Resources to acquire a corridor of land between a roadway and the beach to provide access to the beach. The grant requires a 25% match of funds to be provided by the county and Monroe County is considering using tourist development tax revenues to make up these matching funds.
Section 125.0104, F.S., the "Local Option Tourist Development Act,"[1] authorizes any county in Florida to levy and impose a tax for the privilege of renting, leasing, or letting for consideration "living quarters or accommodations in any hotel, apartment hotel, motel, resort motel, apartment, apartment motel, roominghouse, mobile home park, recreational vehicle park, or condominium for a term of 6 months or less . . ." unless such activities are exempt according to the provisions of Ch. 212, F.S.[2]
The authorized uses for the revenues generated by the tourist development tax are set forth in subsection (5) of the statute which provides in part:
(5) AUTHORIZED USES OF REVENUE. —
 (a) All tax revenues received pursuant to this section by a county imposing the tourist development tax shall be used by that county for the following purposes only:
* * *
 4. To finance beach improvement, maintenance, renourishment, restoration, and erosion control. . . . (e.s.)
It is a well-recognized principle of statutory construction that the mention of one thing in a statute implies the exclusion of another. Thus, when a statute enumerates the things upon which it is to operate, or forbids certain things, it is ordinarily to be construed as excluding from its operation all things not expressly mentioned.[3]
Applying this rule to the instant situation, the specific enumeration in s. 125.0104(5)(a)4., F.S., of those projects for which tourist development tax revenues may be spent implies the exclusion of others.[4] I would note that s. 125.0104(5)(a)1., F.S., clearly authorizes the expenditure of tourist development tax funds for acquisition of publicly owned and operated convention centers, sports stadiums, sports arenas, coliseums, or auditoriums. Thus, the Legislature has made provision for the acquisition of property with tourist development tax funds for certain purposes which do not include the purchase of real property for beach access pursuant to s. 125.0104(5)(a)4., F.S.
Therefore, in the absence of specific authorization in s.125.0104(5)(a)4., F.S., for the purchase of real property for providing public beach access, I cannot conclude that Monroe County may expend tourist development tax revenues for such purpose.
Sincerely,
Robert A. Butterworth Attorney General
(gh)
[1] Section 125.0104(1), F.S.
[2] Section 125.0104(3)(a) and (b), F.S.
[3] See, e.g., Thayer v. State, 335 So.2d 815, 817 (Fla. 1976); and AGO 79-30 which concluded that tourist development tax revenues may be used solely for the maintenance of existing publicly owned and operated facilities meeting the requirements of the statutory designations set out in the Local Option Tourist Development Act.
[4] And see, Dobbs v. Sea Isle Hotel, 56 So.2d 341, 342
(Fla. 1952), and Alsop v. Pierce, 19 So.2d 799, 805-806 (Fla. 1944), for the proposition that a legislative direction as to how a thing shall be done is, in effect, a prohibition against its being done in any other way.