Honorable Norman R. Wolfinger State Attorney Eighteenth Judicial Circuit
QUESTION: 1. Can the 60 day and 90 day holding periods set forth in s. 538.16(1), F.S., be waived by written agreement between the pawner and pawn-broker? 2. Is a pawnbroker subject to criminal prosecution if he fails to hold the pawned property for the required time period, when the time period has purportedly been waived by written agreement between the pawner and the pawnbroker?
SUMMARY: 1. The holding periods set forth in s. 538.16(1), F.S., are mandatory and may not be altered by an agreement between the person pawning property and a pawnbroker. 2. A violation of s. 538.16(1), F.S., is a first degree misdemeanor and also subjects the violator to a fine of not more than $10,000. Further, such a violation may result in the revocation, restriction, or suspension of the registration of a pawn-broker pursuant to s. 538.09, F.S. (1990 Supp.).
AS TO QUESTION 1:
Section 538.16(1), F.S., provides that:
 Any personal property placed with a pawnbroker,[1]
whether the pawn is a loan of money or a purchase of goods,[2]
is subject to sale or disposal when the seller has not repurchased the property from the pawnbroker and there has been no payment on account made for a period of 90 days or the seller has not repurchased the property from the pawnbroker within 60 days after the sale.
The statute does not provide alternative arrangements for disposing of property nor does it authorize pawnbrokers to enter into agreements for holding pawned property with persons pawning property outside the scope of the statute. When the Legislature provides the method of doing a thing, that is in effect, a prohibition against its being done in any other way.[3]
Thus, the specific provisions for disposal of property in s. 538.16(1), F.S., act as a prohibition against any alternate arrangement.
Further, the business of pawnbrokers, because of the facility that it furnishes for the commission of crime and for its concealment, is one which is unlawful if not conducted under the provisions, restrictions, and requirements of the law.[4] The business of pawnbrokering is a privilege, not a right, and a person who enters into this business and is benefitted thereby must conform to the laws in force regulating the occupation. Under the police power, it is properly within the province of the state to designate on what terms and conditions it will permit a pawnbroker to carry on his or her business.[5]
Therefore, in light of these concerns, the activities of pawnbrokers must be in strict conformance with the statutory regulations directing the conduct of this business. In the absence of any legislative authorization for written agreements in derogation of the holding periods set forth in s. 538.16(1), F.S., pawnbrokers have no inherent authority to alter the holding periods prescribed by the statute.
AS TO QUESTION 2:
Section 538.16, F.S., provides no penalty for violation of this section. However, s. 538.07(1), F.S., states that:
Except where otherwise provided herein, a person who knowingly violates any provision of this chapter commits a misdemeanor of the first degree, punishable as provided in s. 775.082 and by a fine not to exceed $10,000.
Section s. 538.16, F.S., does not contain a specific penalty provision. However, s. 538.07(1), F.S., makes a knowing violation of that section a first degree misdemeanor and authorizes the imposition of a substantial fine.
Further, s. 538.09, F.S. (1990 Supp.), which requires the registration of secondhand dealers including pawnbrokers,[6]
provides that a violation of any provision of this chapter may result in the revocation, restriction, or suspension of the pawnbroker's registration.
Thus, violation of s. 538.16(1), F.S., would subject a pawnbroker to both civil or administrative and criminal penalties.
[1] A pawnbroker is defined in s. 538.03(1)(c), F.S. (1990 Supp.), as "a secondhand dealer who is regularly engaged in the business of making pawns but does not include a financial institution as defined in s. 655.081 or any person who regularly loans money or any other thing of value on stocks, bonds, or other securities."
[2] In defining "[p]awn," s. 538.03(1)(d), F.S. (1990 Supp.), states that the term means either of the following transactions:
1. Loan of money. — A written or oral bailment of personal property as security for an engagement or debt, redeemable on certain terms and with the implied power of sale on default.
2. Buy-sell agreement. — An agreement whereby a purchaser agrees to hold property for a specified period of time to allow the seller the exclusive right to repurchase the property. A buy-sell agreement is not a loan of money.
[3] See, e.g., Alsop v. Pierce, 19 So.2d 799, 805
(Fla. 1944), Dobbs v. Sea Isle Hotel, 56 So.2d 341, 342 (Fla. 1952), Thayer v. State, 335 So.2d 815, 817 (Fla. 1976).
[4] See generally, Newman v. Carson, 280 So.2d 426,428 (Fla. 1973) (laws regulating pawnbrokers frustrate the sale of stolen merchandise and greatly enhance the possibility of return of these items to their rightful owners; such laws are in the interest of public welfare and strike at the basic evil of disposal by sale of illegally obtained merchandise); 54 Am.Jur.2dMoneylenders and Pawnbrokers s. 3.
[5] 54 Am.Jur.2d Moneylenders and Pawnbrokers s. 3.
[6] Section 538.03(1)(a), F.S. (1990 Supp.), defines the term "[s]econdhand dealer" to include pawnbrokers:
"Secondhand dealer" means any person, corporation, or other business organization or entity which is not a secondary metals recycler subject to part II and which is engaged in the business of purchasing, consigning, or pawning secondhand goods. Except as provided in subsection (2), the term means pawnbrokers, jewelers, precious metals dealers, garage sale operators, secondhand stores, and consignment shops. (e.s.)