Mr. Harry K. Singletary, Jr., Secretary Florida Department of Corrections 2601 Blairstone Road Tallahassee, Florida 32399-2600
Dear Secretary Singletary:
You have asked for my opinion on substantially the following question:
May the Department of Corrections develop a program for the random drug testing of all its employees absent reasonable suspicion of illegal drug use?
In sum:
The Department of Corrections is specifically authorized by section 944.474(2), Florida Statutes (1996 Supplement), to develop a program for the random drug testing of all employees without the necessity of reasonable suspicion of illegal drug use.
You refer to Attorney General's Opinion 91-98, which concludes that a county tax collector is not authorized to implement a random drug testing policy for employees of that office in the absence of a reasonable suspicion that an employee is using illegal drugs. In light of that conclusion you have asked whether the Department of Corrections may implement a random drug testing policy for its employees.
Attorney General's Opinion 91-98 discusses the provisions of the drug-free workplace program established by the 1990 Legislature in Chapter 440, Florida Statutes. The program is established in the statutory chapter for worker's compensation and identifies types of drug testing that will qualify an employer for reduced rates for workers' compensation insurance when a drug-free workplace plan is implemented. These four types of drug testing are: job applicant testing; reasonable suspicion testing; routine fitness for duty testing; and followup testing.[1] As the opinion points out, "[n]o provision is made in the drugfree workplace program for random testing of employees by an employer."
In addition, the opinion notes that the program established by Chapter 440, Florida Statutes, is not the exclusive statutory drug testing program. A program established by section 112.0455, Florida Statutes,[2] for state employees authorizes the same types of testing as the workers' compensation program described above. As is the case with the Chapter 440 program, however, the state government drug-free workplace program does not authorize random drug testing. Thus, Attorney General's Opinion 91-98 concludes that random drug testing is not authorized under the drug-free workplace programs provided for by those statutes.
However, the Department of Corrections has been given specific authority by the Legislature to develop such a program. Section944.474, Florida Statutes (1996 Supplement),[3] provides as follows:
(1) It is the intent of the Legislature that the state correctional system provide a safe and secure environment for both inmates and staff. A healthy workforce is a productive workforce, and security of the state correctional system can best be provided by strong and healthy employees. The Department of Corrections may develop and implement an employee wellness program. The program may include, but is not limited to, wellness education, smoking cessation, nutritional education, and overall health-risk reduction, including the effects of using drugs and alcohol. (2) Under no circumstances shall employees of the department test positive for illegal use of controlled substances. An employee of the department may not be under the influence of alcohol while on duty. In order to ensure that these prohibitions are adhered to by all employees of the department and notwithstanding s. 112.0455, the department may develop a program for the random drug testing of all employees. The department may randomly evaluate employees for the contemporaneous use or influence of alcohol through the use of alcohol tests and observation methods.
This provision took effect July 1, 1996.[4]
By enacting section 9, Chapter 96-312, Laws of Florida, the Legislature has authorized the Department of Corrections to implement a policy of random drug testing and has not conditioned such testing on a finding of reasonable suspicion of illegal drug use by the employee.[5] Use of the word "random" to describe the testing would appear to clearly express this intent.[6]
Therefore, it is my opinion that the Department of Corrections is authorized by section 944.474(2), Florida Statutes (1996 Supp.), to develop a program for the random drug testing of all employees.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] Section 440.102(4)(a), Fla. Stat. (1995), describes these types of testing as follows:
1. Job applicant drug testing. — An employer must require job applicants to submit to a drug test and may use a refusal to submit to a drug test or a positive confirmed drug test as a basis for refusing to hire a job applicant. 2. Reasonable-suspicion drug testing. — An employer must require an employee to submit to reasonablesuspicion drug testing. 3. Routine fitness-for-duty drug testing. — An employer must require an employee to submit to a drug test if the test is conducted as part of a routinely scheduled employee fitness-for-duty medical examination that is part of the employer's established policy or that is scheduled routinely for all members of an employment classification or group. 4. Followup drug testing. — If the employee in the course of employment enters an employee assistance program for drug-related problems, or a drug rehabilitation program, the employer must require the employee to submit to a drug test as a followup to such program, unless the employee voluntarily entered the program. In those cases, the employer has the option to not require followup testing. If followup testing is required, it must be conducted at least once a year for a 2-year period after completion of the program. Advance notice of a followup testing date must not be given to the employee to be tested.
[2] Section 112.0455, Fla. Stat. (1995), is designated the "Drug-Free Workplace Act[,]" see, s. 112.0455(1), Fla. Stat. (1995), and applies to "any agency within state government[,]" see, s. 112.0455(5)(h), Fla. Stat. (1995).
[3] Section 944.474, Fla. Stat. (1996 Supp.), was created by s. 9, Ch. 96-312, Laws of Florida.
[4] See, s. 61, Ch. 96-312, Laws of Florida.
[5] Cf., Alsop v. Pierce, 19 So.2d 799, 805-806 (Fla. 1944), Dobbs v. Sea Isle Hotel, 56 So.2d 341, 342 (Fla. 1952), and Thayer v. State, 335 So.2d 815, 817 (Fla. 1976), for the proposition that a legislative direction as to how a thing is to be done is, in effect, a prohibition against its being done in any other way.
[6] See, Webster's New Collegiate Dictionary 955 (1975): "random: lacking a definite plan, purpose, or pattern"; The American Heritage Dictionary 568 (office ed. 1983): "random: [h]aving no particular pattern or purpose; haphazard."