Ms. Josefina M. Tamayo General Counsel Department of Children and Families 1317 Winewood Boulevard Tallahassee, Florida 32399-0700
Dear Ms. Tamayo:
You ask the following question:
Are child care programs operated by the Young Men's Christian Association or other membership organizations exempt from licensure by the Department of Children and Families as child care facilities?
In sum:
Programs operated by the Young Men's Christian Association and other membership organizations that fall within the definition of a "child care program" are not exempt from licensure by the Department of Children and Families.
You state that until June 1999 the Department of Children and Families (department) required licensure for child care programs provided by the Young Men's Christian Association (YMCA). As a result of an informal legal opinion from your office, rendered in June 1999, it was determined that the YMCA's child care program was exempt from licensure by the department. This conclusion was based upon a finding that the national organization of the YMCA did not provide child care.[1] The department has since revisited the issue and receded from its previous opinion, concluding that the Legislature did not exempt organizations such as the YMCA from the licensure requirements when child care is provided by an organization.
Section 402.308, Florida Statutes, requires that every "child care facility" in the state be licensed and that such license be renewed annually.[2] The statute further provides that the department or local licensing agencies approved by the department are the entities responsible for the licensure of such facilities.[3] A "[c]hild care facility" is defined as
"any child care center or child care arrangement which provides child care for more than five children unrelated to the operator and which receives a payment, fee, or grant for any of the children receiving care, wherever operated, and whether or not operated for profit. The following are not included:
(a) Public schools and nonpublic schools and their integral programs, except as provided in s. 402.3025;[4]
(b) Summer camps having children in full-time residence;
(c) Summer day camps;
(d) Bible schools normally conducted during vacation periods; and
(e) Operators of transient establishments, as defined in chapter 509, which provide child care services solely for the guests of their establishment or resort, provided that all child care personnel of the establishment are screened according to the level 2 screening requirements of chapter 435."[5]
Thus, the statute sets forth the child care arrangements that will be subject to licensure by the department and provides specific exemptions.[6] No other exemptions should be inferred to be intended when the Legislature has specifically provided exemptions from the operation of a statute.[7]
For purposes of licensure under Chapter 402, Florida Statutes, "[c]hild care" means "the care, protection, and supervision of a child, for a period of less than 24 hours a day on a regular basis, which supplements parental care, enrichment, and health supervision for the child, in accordance with his or her individual needs, and for which a payment, fee, or grant is made for care."[8]
The Legislature has stated its intent to protect the health, safety, and well-being of the children of this state by establishing statewide minimum standards for the care and protection of children in child care facilities.[9] It is made clear, however, that there was no intent to interfere with the religious freedom of all citizens, such that nursery services offered to care for the children of those attending religious services are specifically exempted.[10] Further, the Legislature addressed the licensure of organizations such as boys and girls clubs or the Girl Scouts or Boy Scouts by stating:
It is further the intent that membership organizations affiliated with national organizations which do not provide child care, whose primary purpose is providing activities that contribute to the development of good character or good sportsmanship or to the education or cultural development of minors in this state, which charge only a nominal annual membership fee, which are not for profit, and which are certified by their national associations as being in compliance with the association's minimum standards and procedures shall not be considered child care facilities and therefore, their personnel shall not be required to be screened.[11] (e.s.)
The plain language of the statute exempts those organizations that do not provide child care. However, there is apparent confusion as to whether the phrase "which do not provide child care" relates to the member organizations or the national organizations.
Primarily, the statutory requirements that relate to the organization, beginning with "which do not provide child care" and ending with "which are certified by their national associations . . ." would not make sense if applied to the national organization, since it would recognize the national organization's certification of itself as being in compliance with its minimum standards and procedures. Reading the pivotal characteristic "which do not provide child care" to modify national organizations also would create a loophole for membership organizations that provide child care and, but for their affiliation with the national organization that does not provide child care, would be subject to licensure by the department. Such an interpretation would be contrary to the legislative history of the statute, which stated that legislative intent language was added to provide that "certain membership organizations not providing child care to be exempt from screening."[12]
Chapter 87-238, Laws of Florida, the legislation in which the questioned language was added to section 402.301, Florida Statutes, is entitled "An act relating to screening." The act primarily dealt with security background investigations of employees in programs regulated by statute, including Chapter 402, Florida Statutes, dealing with child care. An amendment to the bill offered on the floor of the House of Representatives was characterized as "a provision on legislative intent that boys and girls clubs and similar groups that do not provide child care are not subject to the screening requirements."[13]
Given the clear legislative intent to establish statewide minimum standards for the care and protection of children in child care facilities, while not infringing on religious rights or parochial programs or regulating the activity programs of membership organizations that do not provide child care, it is my opinion that programs operated by the YMCA and other membership organizations that fall within the definition of a "child care program" are not exempt from licensure by the Department of Children and Families.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] See, Memorandum to Mr. Larry Pintacuda, Chief of Child Care Services, Florida Department of Children and Families, from Mr. Allen R. Roman, Assistant General Counsel, dated June 10, 1999.
[2] Section 402.308(1), Fla. Stat.
[3] Section 402.308(3) and (4), Fla. Stat.
[4] Section 402.3025, Fla. Stat., specifies public and nonpublic school programs that are and are not subject to licensure as child care.
[5] Section 402.302(2), Fla. Stat.
[6] See also, s. 402.316, Fla. Stat., exempting "a child care facility which is an integral part of church or parochial schools conducting regularly scheduled classes, courses of study, or educational programs accredited by, or by a member of, an organization which publishes and requires compliance with its standards for health, safety, and sanitation."
[7] See, Dobbs v. Sea Isle Hotel, 56 So.2d 341, 342 (Fla. 1952) (where a statute sets forth exceptions, no others may be inferred to be intended); Alsop v. Pierce, 19 So.2d 799, 805-806 (Fla. 1944); Thayer v. State, 335 So.2d 815, 817 (Fla. 1976).
[8] Section 402.302(1), Fla. Stat.
[9] Section 402.301(1), Fla. Stat.
[10] Section 402.301(5), Fla. Stat.
[11] Section 402.301(6), Fla. Stat.
[12] See, House of Representatives Committee on Health 
Rehabilitative Services Staff Analysis-General Legislation, HB 1409, June 9, 1987.
[13] See, House of Representatives Floor Debate, May 29, 1987, Tape 1 of 2, Side B; Representative Elaine Bloom explained the amendments to HB 1409 to conform it to its Senate companion.