Mr. Frank Comparetto, Jr. Mulberry City Attorney 114 North Tennessee Avenue Suite 204 Lakeland, Florida 33801-4659
Dear Mr. Comparetto:
On behalf of the City Commission of the City of Mulberry, you ask substantially the following question:
May the city commission amend the city charter, without a referendum, to remove a requirement that the city manager reside within the city?
In sum:
The city commission may amend its city charter, adopted in 1977, to remove a requirement that the city manager reside within the city only if such amendment is approved by referendum of the qualified electors of the municipality.
The Mulberry City Charter requires that the city manager reside within the city during his or her tenure of office.[1] According to your letter, the city commission has expressed concern that this requirement may be too burdensome in locating a qualified city manager to work for the city. The commission is interested in amending the charter to allow the city manager to reside outside the city limits but within a designated "service area." You have advised the city commission that a referendum may be necessary to effectuate this change in the charter; however, the city commission has requested that you seek an Attorney General Opinion on whether such a referendum is required.
Article VIII, section 2(a), Florida Constitution, provides that municipal charters may be amended pursuant to general or special law. The procedure for the amendment of a city charter adopted or readopted after the adoption of the Municipal Home Rule Powers Act in 1973, is provided in section 166.031, Florida Statutes. Section166.031(1), Florida Statutes, states:
"The governing body of a municipality may, by ordinance, or the electors of a municipality may, by petition signed by 10 percent of the registered electors as of the last preceding municipal general election, submit to the electors of said municipality a proposed amendment to its charter, which amendment may be to any part or to all of said charter except that part describing the boundaries of such municipality. The governing body of themunicipality shall place the proposed amendment contained in theordinance or petition to a vote of the electors at the nextgeneral election held within the municipality or at a specialelection called for such purpose."[2] (e.s.)
Subsection (1) of section 166.031, Florida Statutes, thus provides the method for amending municipal charters. If the proposed amendment receives the favorable vote of a majority of the municipal electors voting in the referendum, the governing body shall incorporate the amendment into the charter and file a copy of the revised charter with the Department of State, at which time the revised charter shall become effective.[3] Section 166.031(3), Florida Statutes, provides that a municipality may amend its charter as described above, even if the charter itself provides otherwise.
This office has previously stated that a municipal charter provision adopted or readopted after the adoption of the Municipal Home Rule Powers Act in 1973 must be amended in accordance with section 166.031, Florida Statutes. For example, in Attorney General Opinion 75-223 this office specifically advised the City of Tamarac that its charter, readopted after 1973, could not be amended except as provided in section 166.031.
Similarly, in Attorney General Opinion 79-80 this office stated that the Lake Wales City Commission could not unilaterally amend its municipal charter but could only propose an amendment that would be submitted to the municipal electors for their approval at a referendum held for that purpose. More recently, in Attorney General Opinion 97-53 this office concluded that a city commission could not delegate its canvassing board duties to a consolidated municipal canvassing board, absent an existing charter provision authorizing such a transfer or an amendment to the city's charter approved in a referendum by the city's electorate.[4]
While the Legislature has enacted certain exceptions to the referendum requirements of section 166.031, Florida Statutes,[5]
no such exception exists for the type of amendment under consideration by the Mulberry City Commission. Section 166.031
prescribes the manner for amending municipal charters adopted subsequent to the effective date of the Municipal Home Rule Powers Act. It is a fundamental principle of statutory construction that a legislative directive as to how a thing shall be done is, in effect, a prohibition against it being done in any other way.[6]
As noted above, the charter for the City of Mulberry was adopted in 1977. Accordingly, I am of the opinion that the Mulberry City Commission may not amend its charter to remove a requirement that the city manager reside within the city unless such a change is approved by the electors in a referendum.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] See, s. 12 of the city charter, stating that the city commission (and the mayor if appropriate) shall appoint the city manager who shall be an officer of the city, and providing in subsection (2) that "[a]t the time of his appointment, he need not be a resident of the city or state, but during his tenure of office he shall reside within the city."
[2] For charters adopted prior to 1973 and not subsequently readopted, s. 166.021(4) and (5), Fla. Stat., nullified and repealed or converted into ordinances many provisions of municipal charters in existence on the effective date of the Municipal Home Rule Powers Act, which constituted limitations on, or pertained exclusively to, the power or jurisdiction of a municipality. Section 166.021(4), Fla. Stat., however, states:
"[N]othing in this act shall be construed to permit any changes in a special law or municipal charter which affect the exercise of extraterritorial powers or which affect an area which includes lands within and without a municipality or any changes in a special law or municipal charter which affect the creation or existence of a municipality, the terms of elected officers and the manner of their election except for the selection of election dates and qualifying periods for candidates for changes in terms of office necessitated by such changes in elections dates, the distribution of powers among elected officers, matters prescribed by the charter relating to appointive boards, any change in the form of government, or any rights of municipal employees, without approval by referendum of the electors as provided in s. 166.031. . . ."
[3] See, s. 166.031(2), Fla. Stat.
[4] And see, Op. Att'y Gen. Fla. 88-30 (1988) (charter amendment provisions in s. 166.031, Fla. Stat., prevail over conflicting provisions in a municipal charter).
[5] See, e.g., s. 166.031(3), Fla. Stat., stating:
"A municipality may, by ordinance and without referendum, redefine its boundaries to include only those lands previously annexed and shall file said redefinition with the Department of State pursuant to the provisions of subsection (2)."
And see, s. 166.031(5), Fla. Stat. (municipality may, by unanimous vote of the governing body, abolish municipal departments provided for in the municipal charter and amend provisions or language out of the charter which has been judicially construed, either by judgment or by binding legal precedent from a decision of a court of last resort, to be contrary to either the State Constitution or Federal Constitution); and ss. 166.021(4) and 100.3605, Fla. Stat., authorizing the governing body of a municipality to change the dates for qualifying and for the election of members of the governing body of the municipality by ordinance and provide for the orderly transition of office resulting from such date changes.
[6] See, Alsop v. Pierce, 19 So.2d 799, 805-806 (Fla. 1944);Thayer v. State, 335 So.2d 815, 817 (Fla. 1976)