Mr. Robert K. Robinson North Port City Attorney 22 South Turtle Avenue, Suite 3 Sarasota, Florida 34237
Dear Mr. Robinson:
On behalf of the North Port City Commission, you ask substantially the following questions:
1. May the City of North Port authorize any animal control officers who are not law enforcement officers to carry firearms, including small-caliber rifles?
2. May the city authorize such animal control officers to carry nonchemical stun devices such as taser guns?
In sum:
1. The City of North Port may not authorize any animal control officers who are not law enforcement officers to carry firearms, including small-caliber rifles.
2. While section 828.27, Florida Statutes, authorizes a city or county to adopt an ordinance authorizing its animal control officers to carry a device to chemically subdue and tranquilize an animal provided that the officer has successfully completed training as prescribed in the statute, the statute does not authorize the city ordinance to permit such officers to use nonchemical stun devices such as taser guns.
Question One
You state that the City of North Port is considering adopting an ordinance relating to animal control officers. Presently the city's animal control officers are not law enforcement officers who are otherwise authorized to bear arms.[1] According to your letter, the purpose of the ordinance would be to implement some of the provisions of section 828.27, Florida Statutes.
Section 828.27, Florida Statutes, authorizes the governing body of a county or municipality to enact ordinances relating to animal control or cruelty. This section also establishes certain requirements for such ordinances, including provision that a violation of such an ordinance is a civil infraction, the maximum civil penalty, the issuance of a citation by an officer who has probable cause to believe a person has committed an act in violation of an ordinance, and the contesting of a citation in the county court.[2]
A county or municipality may enact an ordinance relating to animal control or cruelty that is identical to the provisions in Chapter 828, Florida Statutes, or any state law, "except as to penalty."[3]
However, "no county or municipal ordinance relating to animal control or cruelty shall conflict with the provisions of this chapter or any other state law."[4]
The term "Animal control officer" is defined for purposes of section828.27, Florida Statutes, to means:
"any person employed or appointed by a county or municipality who is authorized to investigate, on public or private property, civil infractions relating to animal control or cruelty and to issue citations as provided in this section. An animal control officer is not authorizedto bear arms or make arrests; however, such officer may carry a device to chemically subdue and tranquilize an animal, provided that such officer has successfully completed a minimum of 16 hours of training in marksmanship, equipment handling, safety and animal care, and can demonstrate proficiency in chemical immobilization of animals in accordance with guidelines prescribed in the Chemical Immobilization Operational Guide of the American Humane Association."[5] (e.s.)
The above statute clearly states that an animal control officer as defined above is not authorized to bear arms. It is a principle of statutory construction that when the controlling law directs how a thing is to be done, that is, in effect, a prohibition against its being done in any other way.[6] Moreover, as noted above, section 828.27(7), Florida Statutes, provides that "no county or municipal ordinance relating to animal control or cruelty shall conflict with the provisions of this chapter or any other state law."
Accordingly, I am of the opinion that the City of North Port may not authorize any animal control officers who are not law enforcement officers to carry firearms, including small-caliber rifles.
Question Two
Section 828.27(1)(b), Florida Statutes, in defining "animal control officer" for purposes of the statute, states that while an officer is not authorized to bear arms or make arrests, such officer "may carry a device to chemically subdue and tranquilize an animal, provided that such officer has successfully completed a minimum of 16 hours of training in marksmanship, equipment handling, safety and animal care, and can demonstrate proficiency in chemical immobilization of animals in accordance with guidelines prescribed in the Chemical Immobilization Operational Guide of the American Humane Association."[7]
While the statute provides for animal control officers to carry chemical devices to subdue and tranquilize an animal provided they complete certain training, no provision is made for the use of electric stun guns or taser guns.[8] As discussed in Question One, where the Legislature has prescribed the manner in which something is to be done, it is, in effect, a prohibition against it being done in a different manner.[9]
This office is aware that Chapter 790, Florida Statutes, regulating the use of weapons, permits a private individual to carry a nonlethal stun gun or remote stun gun or other non-lethal electric weapon or device that does not fire a dart or projectile and is designed solely for defensive purposes.[10] Chapter 790 also permits the carrying of a chemical spray for self defense by private individuals; however, for an animal control officer to carry such a device in his official capacity, section 828.27, Florida Statutes, requires the officer to have completed certain training. Section 828.27, however, makes no provision for the use of stun guns by animal control officers when carrying out their official duties.
Accordingly, I am of the opinion that while section 828.27, Florida Statutes, authorizes a city or county to adopt an ordinance authorizing its animal control officers to carry a device to chemically subdue and tranquilize an animal, provided that the officer has successfully completed training as prescribed in the statute, the statute does not authorize the city ordinance to permit such officers to use nonchemical stun devices.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] See, s. 943.10(1), Fla. Stat., defining "Law enforcement officer."And see, s. 767.11(6), Fla. Stat., defining "Animal control officer" for purposes of Ch. 767, Fla. Stat., relating to damage by dogs, to mean "any individual employed, contracted with, or appointed by the animal control authority for the purpose of aiding in the enforcement of this act or any other law or ordinance relating to the licensure of animals, control of animals, or seizure and impoundment of animals and includes any state orlocal law enforcement officer or other employee whose duties in whole or in part include assignments that involve the seizure and impoundment of any animal." (e.s.)
[2] See, s. 828.27(2), Fla. Stat.
[3] Section 828.27(7), Fla. Stat.
[4] Id.
[5] Section 828.27(1)(b), Florida Statutes.
[6] See, e.g., Alsop v. Pierce, 19 So.2d 799, 805 (Fla. 1944);Thayer v. State, 335 So.2d 815, 817 (Fla. 1976).
[7] The statute also provides for other training for animal control officers. See, s. 828.27(4)(a), Fla. Stat., which provides:
"1. County-employed animal control officers shall, and municipally employed animal control officers may, successfully complete a 40-hour minimum standards training course. Such course shall include, but is not limited to, training for: animal cruelty investigations, search and seizure, animal handling, courtroom demeanor, and civil citations. The course curriculum must be approved by the Florida Animal Control Association. An animal control officer who successfully completes such course shall be issued a certificate indicating that he or she has received a passing grade.
2. Any animal control officer who is authorized prior to January 1, 1990, by a county or municipality to issue citations is not required to complete the minimum standards training course.
3. In order to maintain valid certification, every 2 years each certified county-employed animal control officer shall complete 4 hours of postcertification continuing education training. Such training may include, but is not limited to, training for: animal cruelty investigations, search and seizure, animal handling, courtroom demeanor, and civil citations."
[8] Compare, s. 828.058(4)(a), Fla. Stat., stating that euthanasia shall be performed only by a licensed veterinarian or an employee or agent of a public or private agency, animal shelter, or other facility operated for the collection and care of stray, neglected, abandoned or unwanted animals, provided the employee or agent has successfully completed a 16-hour euthanasia technician certification course, the curriculum of which has been approved by the Board of Veterinary Medicine.
[9] See, n. 6, supra.
[10] See, s. 790.053(2), Fla. Stat., which permits a person to openly carry, for purposes of lawful self-defense, a self-defense chemical spray, a nonlethal stun gun or remote stun gun or other nonlethal electric weapon or device which does not fire a dart or projectile and is designed solely for defensive purposes. And see, s. 790.01(4), Fla. Stat., stating that it is not a violation of the section for a person to carry for purposes of lawful self-defense, in a concealed manner, a self-defense chemical spray, a nonlethal stun gun or remote stun gun or other nonlethal electric weapon or device which does not fire a dart or projectile and is designed solely for defensive purposes. See also, s.790.001(13), (14) and (15), Fla. Stat., respectively defining "Weapon," "Electric weapon or device" and "Remote stun gun."