Dear Mr. Godwin:
As ex officio clerk to the Board of County Commissioners, [1] you ask substantially the following question:
 May the small county surtax authorized by section 212.055(3), Florida Statutes, and enacted by a unanimous vote of the county commission be pledged to secure a loan for a water and wastewater treatment facility?
You state that on April 10, 1990, a referendum approved Ordinance 76-90, imposing a one-cent additional sales tax for a period of fifteen years. The general description of the projects to be funded by the proceeds included: road and bridge construction; and construction at the county's landfill, including recycling facilities and acquisition of equipment with a useful life in excess of five years for handling solid waste and recycling.
According to the materials you have provided, on November 4, 2004, the Hamilton County Board of County Commissioners unanimously adopted the levy of the one-percent sales surtax authorized in section 212.055(3), Florida Statutes, commencing July 1, 2005, and expiring December 31, 2019.[2] Projects enumerated in the ordinance to be funded by the surtax include: road and bridge construction; industrial development purposes (industrial park expansion and general purpose economic development projects); development of the Hamilton County Government Complex; construction at the landfill (including recycling facilities and equipment with a useful life in excess of five years); and operational expenses and any infrastructure or any public purpose authorized by the ordinance.[3] Ordinance 2004-10 has the stated purpose of adopting the "Small County Sales Surtax." The question has arisen whether the proceeds from the continuation of the additional sales tax may be pledged to secure a loan for a water and wastewater treatment facility without referendum approval.
Section 212.055(3), Florida Statutes, allows counties with a population of 50,000 or less on April 1, 1992, to levy a discretionary sales surtax of 0.5 percent or 1 percent. If the surtax is to be used for operating expenses, then it may be enacted by passage of an ordinance by an extraordinary vote of the county's governing body. If the proceeds are used for the purpose of servicing bond indebtedness, the surtax must be approved by a majority of the electors of the county voting in a referendum.[4]
Paragraph (d) of subsection (3) provides:
 "1. If the surtax is levied pursuant to a referendum, the proceeds of the surtax and any interest accrued thereto may be expended by the school district or within the county and municipalities within the county, or, in the case of a negotiated joint county agreement, within another county, for the purpose of servicing bond indebtedness to finance, plan, and construct infrastructure and to acquire land for public recreation or conservation or protection of natural resources. However, if the surtax is levied pursuant to an ordinance approved by an extraordinary vote of the members of the county governing authority, the proceeds and any interest accrued thereto may be used for operational expenses of any infrastructure or for any public purpose authorized in the ordinance under which the surtax is levied." (e.s.)
Clearly, there is a distinction between the use of funds to pay operational expenses of infrastructure and any public purpose authorized in the ordinance and the use of such funds to service indebtedness. While the former requires only an extraordinary vote of the county's governing body, the latter requires referendum approval. This reading is supported by paragraph (e) of the statute recognizing that a county receiving proceeds following a referendum may pledge the proceeds for the purpose of servicing new bond indebtedness.[5]
The statute speaks to pledging the proceeds for servicing bond indebtedness, while you have posed the question in terms of securing a loan. In Attorney General Opinion 92-08, this office was asked whether the surtax could be used to service bonds that would be issued to refund notes issued prior to referendum approval of the surtax. In the opinion, it was noted that the city had issued notes, rather than bonds, but that both are debts that would be subject to the restrictions in section212.055, Florida Statutes. Likewise, there would appear to be no distinction between pledging the proceeds for servicing an indebtedness and pledging or using the proceeds to secure a loan.
When a statute directs the manner in which something is to be done, it acts as a prohibition against its being done in any other manner.[6]
Thus, it would appear that surtax revenues may not be pledged to secure a loan, absent referendum approval.
Accordingly, it is my opinion that the surtax authorized by section212.055(3), Florida Statutes, and enacted by a unanimous vote of the county commission may not be pledged to secure a loan for a water and wastewater treatment facility, absent referendum approval.
Sincerely,
 Bill McCollum Attorney General
BM/tals
[1] Article VIII, s. 1(d), Fla. Const., provides: "When not otherwise provided by county charter or special law approved by vote of the electors, the clerk of the circuit court shall be ex officio clerk of the board of county commissioners, auditor, recorder and custodian of all county funds." See Alachua County v. Powers, 351 So. 2d 32 (Fla. 1977) (clerk of court has authority and responsibility to perform auditing functions as arm of board of county commission in auditing records of constitutional officers, and as watchdog of the board in pre-auditing accounts of the board in determining legality of expenditures). But see
Op. Att'y Gen. Fla. 86-38 (1986) (clerk of court as ex officio county auditor not authorized to perform post-audit functions on the records of other constitutional officers).
[2] Ordinance No. 2004-10, Board of County Commissioners, Hamilton County, Florida.
[3] "Infrastructure" is defined the same as in section 212.055(3)(d)2., Fla. Stat., meaning "any fixed capital expenditure or fixed capital costs associated with the construction, reconstruction, or improvement of public facilities that have a life expectancy of 5 or more years and any land acquisition, land improvement, design, and engineering costs related thereto."
[4] Section 212.055(3), Fla. Stat. Subsection (b) of the statute requires a statement including a brief general description of the projects to be funded by the surtax and conforming to the requirements of s. 101.161, Fla. Stat., to be placed on the ballot for a referendum on the levy of the surtax for the purpose of servicing bond indebtedness, and dictates the format of the question placed on the ballot: _____FOR the _____-cent sales tax; _____AGAINST the _____-cent sales tax.
[5] Section 212.055(3)(e), Fla. Stat., states:
 "A school district, county, or municipality that receives proceeds under this subsection following a referendum may pledge the proceeds for the purpose of servicing new bond indebtedness incurred pursuant to law. Local governments may use the services of the Division of Bond Finance pursuant to the State Bond Act to issue any bonds through the provisions of this subsection. A jurisdiction may not issue bonds pursuant to this subsection more frequently than once per year. A county and municipality may join together to issue bonds authorized by this subsection." (e.s.)
[6] See Alsop v. Pierce, 19 So. 2d 799, 805-806 (Fla. 1944); Dobbs v.Sea Isle Hotel, 56 So. 2d 341, 342 (Fla. 1952); Thayer v. State, 335 So. 2d 815, 817 (Fla. 1976).