Dear Mr. McAteer:
As Sumter County Attorney, you have asked for my opinion on substantially the following question:
May Sumter County use tourist development tax dollars collected pursuant to section 125.0104, Florida Statutes, to stock publicly accessible freshwater county lakes with native freshwater game fish, upon a proper legislative finding by the board of county commissioners that such an activity will promote tourism in the county?
In sum:
An expenditure of tourist development tax revenues pursuant to section 125.0104, Florida Statutes, must be based on a determination by the governing body of the county that the activity directly and primarily promotes tourism. However, in light of the language of section 125.0104(5)(a)(4), Florida Statutes, requiring that these funds be used for projects involving the alteration or enhancement of the physical aspects of inland lakes and rivers, the use of tourist development funds for stocking a lake with game fish would appear to be questionable.
Section 125.0104, Florida Statutes, known as the Local Option Tourist Development Act[1] (the act), authorizes a county to impose a tax on short-term rentals of living quarters or accommodations within the county unless such activities are exempt pursuant to Chapter 212, Florida Statutes.[2] The purpose and intent of Section 125.0104, Florida Statutes, is to "provide for the advancement, generation, growth and promotion of tourism, the enhancement of the tourist industry, and the attraction of conventioneers and tourists from within and without the state to a particular area or county of the state."[3]
The Local Option Tourist Development Act requires that construction of publicly owned facilities financed by proceeds from the tourist development tax be primarily related to the advancement and promotion of tourism. It is the governing body of the county that must make the factual determination of whether a particular facility or project is related to tourism and primarily promotes such a purpose. This determination must follow appropriate legislative findings and due consideration of the specific needs and conditions of the particular locality.[4]
Subsection (5) of the act sets forth various purposes for which revenues from the tax may be used. Relevant to the question you have posed, section 125.0104(5)(a)4., Florida Statutes, authorizes the expenditure of tax revenues for the following purpose:
"To finance beach park facilities or beach improvement, maintenance, renourishment, restoration, and erosion control, including shoreline protection, enhancement, cleanup, orrestoration of inland lakes and rivers to which there is publicaccess as those uses relate to the physical preservation of thebeach, shoreline, or inland lake or river. However, any funds identified by a county as the local matching source for beach renourishment, restoration, or erosion control projects included in the long-range budget plan of the state's Beach Management Plan, pursuant to s. 161.091, or funds contractually obligated by a county in the financial plan for a federally authorized shore protection project may not be used or loaned for any other purpose. In counties of less than 100,000 population, no more than 10 percent of the revenues from the tourist development tax may be used for beach park facilities." (e.s.)
You have directed my attention to the language in the statute emphasized above that authorizes the expenditure of tourist development tax funds for purposes "including shoreline protection, enhancement, cleanup, or restoration of inland lakes and rivers" to which the public has access. I would note however that this language is qualified by the phrase "as those uses relate to the physical preservation of the beach, shoreline, or inland lake or river." Thus, the Legislature has authorized the use of tourist development tax revenues for the enhancement and restoration of inland lakes, but has qualified that authorization by requiring that those projects must relate to activities and structures directed at the physical aspects of these lakes.
It is a general principle of statutory construction that the mention or enumeration of one thing in a statute implies the exclusion of another and that a legislative direction as to how a thing shall be done is, in effect, a prohibition against its being done in any other way.[5] The legislative authorization in section 125.0104(5)(a)4., Florida Statutes, for the expenditure of tourist development funds for enhancement of inland lakes as that relates to the physical preservation of the lake implies that these funds may not be used for projects that do not meet these criteria. In addition, the county possesses no home rule powers regarding taxation, but must act in accordance with the terms of the statute.[6]
Prior to its amendment in 1997 to include "beach park facilities" within the uses for which tourist development taxes may be used, this office had considered and discussed the use of such funds for "beach improvement, maintenance, renourishment, restoration, and erosion control." Attorney General Opinion 90-55 considered whether the language of the statute would authorize the construction of artificial structures, such as sanitary facilities, upon the beach. The opinion concluded that the terms "beach improvement, maintenance, renourishment, restoration, and erosion control" read together related to the actual, physical nature of the beach rather than authorizing the construction of artificial structures upon the beach or authorizing other activities which did not protect or enhance the physical nature of the beach. Thus, improvements to the actual physical nature of the beach are authorized by section 125.0104, Florida Statutes.
In Attorney General Opinion 97-48, this office was asked to consider whether a county could use tourist development tax dollars to construct an artificial reef to provide diving and snorkeling opportunities in waters bordering the county. Information provided with the opinion request suggested that the proposed artificial reef was to be part of a larger scheme to develop an aquatic nature center. After determining that an aquatic nature center could be characterized as a nature facility within the scope of section 125.0104(5)(b), Florida Statutes, it was concluded that tourist development taxes could be used for its development. The opinion notes that "[u]ltimately, however, the determination of whether a particular expenditure satisfies the requirements of section 125.0104, Florida Statutes, is the responsibility of the governing body of the county and cannot be delegated to this office."
Section 125.0104(5)(a)4., Florida Statutes, authorizes the use of tourist development tax revenues for "shoreline protection, enhancement, cleanup, or restoration of inland lakes and rivers to which there is public access as those uses relate to the physical preservation of the beach, shoreline, or inland lake or river." Based on the language of the statute, it is my opinion that an expenditure of tourist development tax revenues pursuant to section 125.0104, Florida Statutes, must be based on a determination by the governing body of the county that the activity directly and primarily promotes tourism. However, in light of the language of Section 125.0104(5)(a)4., Florida Statutes, requiring that these funds be used for projects involving the alteration or enhancement of the physical aspects of inland lakes and rivers, the use of tourist development funds for stocking a lake with game fish would appear to be questionable.
Sincerely,
 Bill McCollum Attorney General
BM/tgh
[1] Section 125.0104(1), Fla. Stat.
[2] See s. 125.0104(3)(a), Fla. Stat., stating it is the intent of the Legislature that every person who rents, leases, or lets living quarters or accommodations in "any hotel, apartment hotel, motel, resort motel, apartment, apartment motel, roominghouse, mobile home park, recreational vehicle park, or condominium, or timeshare resort for a term of 6 months or less is exercising a privilege which is subject to taxation under this section. . . ."
[3] See Ops. Att'y Gen. Fla. 95-71 (1995), 94-12 (1994), 87-16 (1987), and 83-18 (1983).
[4] See Op. Att'y Gen. Fla. 94-12 (1994) (governing body of the county must make determination that expenditure of tourist development tax revenues for the acquisition of a railway right-of-way and construction of a public recreational trail falls within the scope of expenditures authorized by s. 125.0104, Fla. Stat.).
[5] See Thayer v. State, 335 So. 2d 815, 817 (Fla. 1976);Alsop v. Pierce, 19 So. 2d 799, 805-806 (Fla. 1944). Andsee Ops. Att'y Gen. Fla. 09-28 (2009) and 88-49 (1988) (expenditure of tourist development tax revenues is limited to those purposes set forth in the statute).
[6] See Ops. Att'y Gen. Fla. 09-28 (2009) (county may not used infrastructure surtax proceeds for Naval Flight Academy); 99-72 (1999) (neither cities nor municipalities have home rule powers with respect to the levy of taxes and exemptions therefrom, but must point to constitutional or statutory authority in exercising taxing power); 90-23 (1990) (city may not provide for the rebate of ad valorem taxes collected on newly annexed property, in the absence of constitutional or statutory authority allowing such action); 87-45 (1987); and 84-65 (1984) (units of local government have no inherent power to impose taxes; the taxing power must be derived from the state).