Mr. C. David Coffey Cedar Key City Attorney Haile Village Center 5346 Southwest 91st Terrace Gainesville, Florida 32608
Dear Mr. Coffey:
On behalf of the City of Cedar Key you ask substantially the following questions:
1. May the City of Cedar Key require that all golf carts operated on public streets within its jurisdiction undergo annual registration and safety inspections and display a decal providing verification of such registration and inspection?
2. May a municipality impose additional safety standards for golf carts that use public streets, including a requirement that golf carts be equipped with rear stop lights meeting the minimum standards in section 316.234(1), Florida Statutes, turn signals meeting the minimum standards in section 316.234(2), Florida Statutes, and safety belts?
3. May the city require that all drivers of golf carts between the ages of 14 and 16 operating on public streets be accompanied by a licensed driver?
4. May the city allow golf carts on county roads within the city's boundaries without the county's approval?
Due to the interrelation of the issues you have raised and the requirements set forth in section 316.212, Florida Statutes, your questions will be answered together.
The City of Cedar Key has historically allowed golf carts[1] to operate on city streets, with certain age and other restrictions. The city recognizes, however, that section 316.212, Florida Statutes, regulates the operation of golf carts and may impact the city's ability to impose local regulations.[2] You state that the city benefits from the use of golf carts on its streets and would like to continue their use with additional regulations to promote public safety.
Chapter 316, Florida Statutes, Florida's Uniform Traffic Control Law, makes uniform traffic laws applicable throughout the state and its counties and uniform traffic ordinances applicable in all municipalities.[3] While the chapter was enacted to eliminate the "hodgepodge of ordinances which vary as to language and penalty,"[4] there are instances where the Legislature has recognized that municipalities may control traffic movement or parking.[5] The statute provides, however, that "[i]t is unlawful for any local authority to pass or to attempt to enforce any ordinance in conflict with the provisions of this chapter."[6] This office has previously concluded that absent express authorization under the Uniform Traffic Control Law, Chapter 316, Florida Statutes, operates to prohibit any local legislation on traffic control or enforcement.[7]
Section 316.212, Florida Statutes, in pertinent part, provides:
"The operation of a golf cart upon the public roads or streets of this state is prohibited except as provided herein:
(1) A golf cart may be operated only upon a county road that has been designated by a county, or a city street that has been designated by a city, for use by golf carts. Prior to making such a designation, the responsible local governmental entity must first determine that golf carts may safely travel on or cross the public road or street, considering factors including the speed, volume, and character of motor vehicle traffic using the road or street. Upon a determination that golf carts may be safely operated on a designated road or street, the responsible governmental entity shall post appropriate signs to indicate that such operation is allowed.
* * *
(4) A golf cart may be operated only during the hours between sunrise and sunset, unless the responsible governmental entity has determined that a golf cart may be operated during the hours between sunset and sunrise and the golf cart is equipped with headlights, brake lights, turn signals, and a windshield. (5) A golf cart must be equipped with efficient brakes, reliable steering apparatus, safe tires, a rearview mirror, and red reflectorized warning devices in both the front and rear. (6) A golf cart may not be operated on public roads or streets by any person under the age of 14. (7) A violation of this section is a noncriminal traffic infraction, punishable pursuant to chapter 318 as either a moving violation for infractions of subsection (1), subsection (2), subsection (3), or subsection (4), or as a nonmoving violation for infractions of subsections (5) and (6)."
Thus, the statute enumerates the safety equipment and other restrictions, such as the age of the operator, that may be applied to golf carts. It also recognizes that a local government may make a determination that golf carts may be operated during the hours between sunset and sunrise if the cart is equipped with headlights, brake lights, turn signals, and a windshield. Otherwise, basic equipment required for all golf carts is efficient brakes, a reliable steering apparatus, safe tires, a rearview mirror, and red reflectorized warning devices in both the front and rear. Where the Legislature has prescribed the manner in which something is to done, it operates as a prohibition against its being done in any other way.[8] Thus, the city is precluded from requiring additional safety equipment or imposing more restrictive operational requirements for golf carts operating within its jurisdiction.
In a previous opinion of this office, it was concluded that a municipality has no authority to impose more restrictive age or licensure requirements for the operation of golf carts than those imposed in section 316.212, Florida Statutes.[9] The rationale of this opinion would apply equally to any additional restrictions imposed by a municipality, such as requiring a licensed adult to accompany operators under the age of 16 or requiring that golf carts be equipped with seat belts.[10]
Moreover, a mandatory local inspection program to ensure compliance with the equipment requirements enumerated in section316.212, Florida Statutes, would appear to exceed the specific provisions of subsection (7) for enforcement of golf cart operation and equipment, making noncompliance a noncriminal traffic infraction punishable under Chapter 318, Florida Statutes. There is no apparent obstacle to the city offering a voluntary inspection and registration program as a service to those persons operating golf carts within the city's boundaries.
Section 316.008, Florida Statutes, enumerates the powers that may be exercised by local governments relating to streets and highways within their jurisdictions. Relative to your inquiry, a municipality may restrict the use of streets, prohibit or regulate the use of controlled access roadways by any class or kind of vehicle, and prohibit or regulate the use of heavily traveled streets by any class or kind of traffic determined to be incompatible with the normal and safe movement of traffic.[11]
None of these authorized areas would appear to allow a municipality to enact an ordinance requiring additional safety equipment on golf carts or restricting the operation of golf carts by persons under the age of 16 to those occasions when they are accompanied by a licensed driver.
Section 316.006(2), Florida Statutes, states that "[c]hartered municipalities shall have original jurisdiction over all streetsand highways located within their boundaries, except state roads. . . ." (e.s.) Counties, however, possess original jurisdiction over "all streets and highways located within their boundariesexcept all state roads and those streets and highways specifiedin subsection (2). . . ."[12] (e.s.) The plain language of the statute allows municipalities to enforce the uniform traffic laws of Chapter 316, Florida Statutes, on county roads located within their jurisdictions.[13] It would appear, therefore, that municipalities have been granted the authority to designate roads within their jurisdictions, except state roads, upon which golf carts may operate.
Accordingly, it is my opinion that, while the City of Cedar Key may provide a voluntary inspection and registration program for golf carts operating within its jurisdiction, it may not require that all golf carts operated on its streets undergo annual registration and safety inspections and display a decal providing verification of such registration and inspection. Nor may the city impose additional safety standards or operator qualifications on golf carts beyond those prescribed in section316.212, Florida Statutes. The city, however, has original jurisdiction over all streets other than state roads located within its boundaries and may authorize the operation of golf carts on county roads located within the city without the county's approval.
Sincerely,
Charlie Crist Attorney General
[1] Section 320.01(22), Fla. Stat., defines "golf cart" as "a motor vehicle that is designed and manufactured for operation on a golf course for sporting or recreational purposes and that is not capable of exceeding speeds of 20 miles per hour."
[2] Recently, this office issued Attorney General Opinion 2003-44, in which it was concluded that motorized scooters, while not "motor vehicles" for purposes of Ch. 316, Fla. Stat., and not eligible for registration under s. 320.02, Fla. Stat., are vehicles for purposes of excluding them from operation on sidewalks and "motor vehicles" for purposes of Ch. 322, Fla. Stat., requiring a license for the individual operator. As noted in the opinion, the Legislature may wish to clarify the inconsistent treatment of motorized scooters under the motor vehicle laws. Unlike motorized scooters, however, the Legislature has authorized the operation of golf carts on the public roads of this state under specific conditions. See, also, s. 316.2068, Fla. Stat., authorizing the operation of an "electric personal assistive mobility device" on roads with a posted speed limit of 25 miles per hour or less, without need for a license, registration, or insurance.
[3] See s. 316.002, Fla. Stat., setting forth the Legislature's intent in adopting Chapter 316, Fla. Stat.
[4] See Preamble to Ch. 71-135, Laws of Florida, creating Ch.316, Fla. Stat.
[5] Section 316.008, Fla. Stat., enumerating the powers of local authorities.
[6] See s. 316.002, Fla. Stat.
[7] See Ops. Att'y Gen. Fla. 01-06 (2001), 98-62 (1998) and 98-15 (1998).
[8] See Alsop v. Pierce, 19 So.2d 799, 805 (Fla. 1944) (where Legislature prescribes the mode, that mode must be observed).
[9] See Op. Att'y Gen. Fla. 02-11 (2002).
[10] Cf. Ops. Att'y Gen. Fla. 95-13 (1995) (city may not enact an ordinance that makes the failure to wear a safety belt while operating a vehicle on city streets a primary offense since Legislature has expressly mandated in s. 316.614(9), Fla. Stat., that enforcement of the safety belt law by local governments is only by means of a secondary action when the driver of a vehicle has been detained for a suspected violation of another section of Chs. 316, 320 or 322, Fla. Stat.) and 77-84 (1977) (municipalities not authorized to require that motor-propelled bicycles or moped operators and riders wear protective headgear and eye-protective devices, while operating or riding such bicycle/mopeds within the city limits since the manner and places of their operation, equipment required thereon, and equipment, if any, for the operators or riders thereof is governed by s. 316.111, Fla. Stat., and other related statutes). See also, s.322.04(1)(e), Fla. Stat., exempting from the requirement of a driver's license "[a]ny person operating a golf cart, as defined in s. 320.01, which is operated in accordance with the provisions of s. 316.212."
[11] Section 316.008(1)(g), (m), and (n), Fla. Stat.
[12] Section 316.006(3)(a), Fla. Stat.
[13] See Op. Att'y Gen. Fla. 01-06 (2001) (municipality may set a 30 mph speed limit on a portion of county road running through a residential district within the municipality).