Mr. Jeb T. Branham Baldwin Town Attorney 166 A1A North, Suite 201J Ponte Vedra Beach, Florida 32082
Dear Mr. Branham:
You ask substantially the following question:
Is the Town of Baldwin required to ensure that $12.50 from each moving traffic violation received from Duval County pursuant to section 318.21(9), Florida Statutes, is used for local law enforcement automation rather than general law enforcement?
Section 318.21, Florida Statutes, provides a scheme for the distribution of civil penalties by county courts. The statute states that "(a)ll civil penalties received by a county court pursuant to the provisions of this chapter shall be distributed and paid monthly as (prescribed in the statute)."[1] Subsection (9) of the statute provides:
"Twelve dollars and fifty cents from each moving traffic violation must be used by the county to fund that county's participation in an intergovernmental radio communication program approved by the Department of Management Services. If the county is not participating in such a program, funds collected must be used to fund local law enforcement automation and must be distributed to the municipality or special improvement district in which the violation occurred or to the county if the violation occurred within the unincorporated area of the county."
Prior to 1996, section 316.655(7), Florida Statutes (1995), provided:
"In addition to any other penalty provided for violation of the state uniform traffic control law pursuant to [chapter 316] or chapter 318, any county that participates in an intergovernmental radio communication program approved by the Division of Communications of the Department of Management Services may assess an additional surcharge of up to $12.50 for each moving traffic violation, which surcharge must be used by the county to fund that county's participation in the program."
This office, in Attorney General Opinion 94-38, stated that under the then-existing language of section 316.655, Florida Statutes, the use of the surcharge to fund a municipality's, rather than a county's, participation in an intergovernmental communication program was not authorized. The language of section 316.655, Florida Statutes, quoted above was deleted in 1996 by the same act that added language to section318.21, Florida Statutes, authorizing a municipality to use the surcharge for law enforcement automation.[2]
While section 318.21(9), Florida Statutes, permits distribution to a municipality, such distribution occurs only if the county in which the municipality is located is not participating in an intergovernmental radio communication program approved by the Division of Communications of the Department of Management Services.[3] You have advised this office that Duval County, i.e., the City of Jacksonville, does not participate in an intergovernmental radio communication program; therefore, the county court's remittance of funds to the town from traffic tickets pursuant to section 318.21(9), includes the $12.50. The statute, however, requires that the funds received by a municipality pursuant to section318.21(9), be used to fund law enforcement automation. This office stated in Attorney General Opinion 97-73 that the civil penalty imposed for traffic violations that is disbursed to a city pursuant to s. 318.21, Florida Statutes, to fund local law enforcement automation could not be used to purchase law enforcement automobiles.[4]
You state that the funds received pursuant to section 318.21(9), Florida Statutes, are placed in the general revenue fund of the town. While the statute does not dictate that the funds must be placed in a separate account,[5] they may be used only for law enforcement automation and not for law enforcement purposes generally. When the controlling law directs how a thing shall be done, that is, in effect, a prohibition against its being done in any other way.[6]
Accordingly, I am of the opinion that the town must ensure that the funds received pursuant to section 318.21(9), Florida Statutes, are used only for law enforcement automation and not for general law enforcement purposes.
Sincerely,
Charlie Crist Attorney General
CC/tjw
[1] Cf. Art. V, s. 20(c)(8), Fla. Const. (fines and forfeitures received from violations of ordinances or misdemeanors committed within a county or municipal ordinances committed within a municipality shall be paid monthly to the county or municipality respectively); s. 142.03, Fla. Stat. (fines, forfeitures, and civil penalties for violations of Ch. 316 committed within a municipality, or infractions under Ch. 318 committed within a municipality, shall be paid in full each month to the appropriate municipality as provided in ss. 28.2402, 34.045, 316.660, and318.21); s. 34.191, Fla. Stat. And see s. 316.660, Fla. Stat., stating that "[e]xcept as otherwise provided by law, all fines and forfeitures received by any county court from violations of any of the provisions of this chapter, or from violations of any ordinances adopting matter covered by this chapter, must be paid and distributed as provided in s.318.21."
[2] See s. 40, Ch. 96-350, Laws of Florida, amending s. 316.655, Fla. Stat. (1995), and s. 49, Ch. 96-350, Laws of Florida, which added the language currently contained in s. 318.21(9), Fla. Stat.
[3] Cf. Op. Att'y Gen. Fla. 97-38 (1997), in which this office considered the distribution of surcharge funds to two towns in Walton County pursuant to s. 318.21, Fla. Stat., when this office was advised that Walton County did not participate in an intergovernmental radio communication program approved by the Division of Communications of the Department of Management Services.
[4] In Op. Att'y Gen. Fla. 97-73, this office noted that since the term "automation" was not defined in the statute, it should be given its plain and ordinary meaning, with consideration given not only to the literal and usual meaning of words but also to their effect and meaning on the objectives and purposes of the statute's enactment. See FloridaBirth-Related Neurological Injury Compensation Association v. FloridaDivision of Administrative Hearings, 686 So.2d 1349 (Fla. 1997). The term "automation" has been generally defined as "the technique of making an apparatus (as a calculating machine), a process (as of manufacturing), or a system (as of bookkeeping) operate automatically; the state of being operated automatically: automatically controlled operation of an apparatus, process, or system by mechanical or electronic devices that take the place of human organs of observation, effort, and decision." Webster's Third New International Dictionary 148 (unabridged ed. 1981). The use of the term "automation" elsewhere in the Florida Statutes is generally in accordance with the above definition. See, e.g., ss.20.21(2)(e) (automation of all information systems), 98.451 (automation of processing elector registration), Fla. Stat.; and see ss. 119.01(2)(a), Fla. Stat. (automation of public records), 943.325(8) (Department of Law Enforcement to establish an automated DNA identification system), Fla. Stat.
[5] Cf. In re Advisory Opinion to the Governor, 60 So.2d 285 (Fla. 1952); Peters v. Hansen, 157 So.2d 103 (Fla. 2nd DCA 1963) (where a public officer is charged by law with a specific duty, and the means by which the duty is to be accomplished are not specially provided for, the public officer has the implied power to use such means as are reasonably necessary to the successful performance of the required duty).
[6] See Alsop v. Pierce, 19 So.2d 799, 805-806 (Fla. 1944) ("When the Legislature has prescribed the mode, that mode must be observed"); Thayerv. State, 335 So.2d 815, 817 (Fla. 1976).